Hillsborough
No. 80–389

THE STATE OF NEW HAMPSHIRE

v.

DANIEL BERRY

April 17, 1981

*Gregory H. Smith*, attorney general (*Martha V. Gordon*, assistant attorney general, on the brief and orally), for the State.

*Cathy J. Green*, of Manchester, by brief and orally, for the defendant.

KING, J. The issue in this case is whether the results of a blood test which was taken over the defendant's objection while he was under arrest for driving while under the influence of intoxicating liquor and after grounds for a charge of negligent homicide had arisen must, by virtue of RSA 262-A:69-e (Supp. 1979), be excluded from evidence in a subsequent prosecution for negligent homicide. We hold that the admission of the blood test results is prohibited by the statute in these circumstances.

An accident occurred at approximately 1:15 a.m. on October 6, 1979, involving a vehicle driven by the defendant and another vehicle in which there were three persons. The defendant was arrested for driving while under the influence of intoxicating liquor. RSA 262-A:62 (Supp. 1979). At about 2:45 a.m., in the X-ray room of the hospital to which the defendant was taken because of his injuries, the police advised the defendant of his rights under the implied consent law, RSA 262-A:69. The defendant inquired as to the condition of the other persons who had been injured in the accident. Receiving no answer, he refused to consent to a blood test.

At 3:25 a.m., after learning that one of the injured persons had died, the police again asked the defendant to submit to a blood test. The defendant, who was then passing in and out of consciousness, repeated his refusal. Shortly thereafter, the police learned that the second of the three accident victims had died. Because it appeared that the defendant might be charged with negligent homicide, the police had a doctor take a sample of the defendant's blood without his consent.

The defendant was eventually charged with negligent homicide. RSA 630:3 II. Prior to trial, he filed a motion to suppress the results of the blood test on the ground that the blood sample was taken without his consent. The Superior Court (Goode, J.) transferred the question to this court without ruling.

Under the provisions of the State's implied consent law, any person who operates a motor vehicle upon the public highways is deemed to consent to chemical or other tests of his blood, urine or breath for the purpose of determining the alcohol or controlled drug content of his blood if he is arrested for any offense arising out of acts alleged to have been committed while he was driving a motor vehicle while intoxicated. RSA 262-A:69-a. This implied consent is not irrevocable, however, because RSA 262-A:69-e (Supp. 1979) allows a person to refuse to submit to the chemical test and specifically provides that "if a person under arrest refuses . . . to submit to a chemical test . . . none shall be given." (Emphasis added.) Of course, a person refusing to submit to an officer's request that he consent to a chemical test faces the possibility that the director of the division of motor vehicles will revoke his license to operate a motor vehicle. RSA 262-A:69-e (Supp. 1979); see Daneault v. Clarke, 113 N.H. 481, 484, 309 A.2d 884, 885–86 (1973).

■ It is undisputed that the defendant expressly refused to consent to the chemical test of his blood on two separate occasions and that the police had a sample of his blood extracted and tested

against his will. Consequently, the only issue is whether the statutory language "none shall be given" means "none shall be given" or something else. In this State, statutory language is given its plain and common usage unless the language has a technical or otherwise peculiar meaning. *Sant Bani Ashram, Inc. v. N.H. Dep't of Empl. Security*, 121 N.H. 74, 77, 426 A.2d 34, 36 (1981); RSA 21:2; *see State v. Linsky*, 117 N.H. 866, 874, 379 A.2d 813, 818 (1977). There is nothing in the briefs of the parties, or the legislative history of the implied consent statute, to indicate that the words "none shall be given" were intended by the legislature to mean other than that no chemical test shall be administered without the accused's consent.

The State's reliance upon *Schmerber v. California*, 384 U.S. 757 (1966), is misplaced. The warrantless taking of blood from a person under arrest without his consent is undoubtedly constitutional, and many cases have so held. None of these cases, however, dealt with a situation in which a statute plainly indicates that a blood sample shall not be taken if the subject refuses to consent. *See State v. Riggins*, 348 So. 2d 1209, 1211 (Fla. Dist. Ct. App. 1977), *cert. dismissed*, 362 So. 2d 1056 (1978).

The State's assertion that the legislature could not have intended to give up the right to obtain chemical tests under the rule laid down in *Schmerber* or pursuant to a proper warrant is unpersuasive. Courts in other states have recognized that the legislature can confer upon individuals a statutory right to withhold consent even though there is no such constitutional right. *See State v. Brean*, 136 Vt. 147, 151–52, 385 A.2d 1085, 1088 (1978); *State v. Stevens*, 252 A.2d 48, 60 (Me. 1969). Furthermore, to substitute our understanding of what the legislature intended for the express language of the statute in this way would significantly interfere with the legislative prerogative, and we therefore will not look behind the express, unambiguous language of the statute. If the contours of criminal statutes are to be determined by the subsequent development of constitutional law, it seems superfluous to enact statutes at all.

The State argues that, assuming *arguendo* that RSA 262-A:69-e (Supp. 1979) does prohibit the taking of a blood sample over the accused's objection, the protection afforded by that statute applies only to prosecutions under RSA 262-A:62 (Supp. 1979) and should not be extended to prosecutions for negligent homicide. The State offers no explanation, however, of why cases of negligent homicide should be treated differently from other cases. The

attempt to restrict the scope of RSA 262-A:69-e (Supp. 1979) in this way, with no accompanying rationale, is especially unpersuasive in light of our previous holding that the provisions of the implied consent law apply to *"any offense* arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor . . . ." *State v. Murgatroy,* 115 N.H. 717, 719, 349 A.2d 600, 602 (1975) (emphasis in original); *see* RSA 262-A:69-e (Supp. 1979).

■ Finally, we reject the State's assertion that RSA 262-A:69-e (Supp. 1979) does not require the exclusion of evidence obtained in violation of its terms. That the statute does not expressly require the exclusion of illegally obtained test results is not dispositive. The statute specifically provides that if the person's consent is not obtained, no test shall be administered. This language clearly indicates the legislative intent to preclude the State from using the results of chemical tests of a person's blood unless the person consents to the test. Had the legislature intended to allow the use of the results of chemical tests of a person's blood, it certainly would not have adopted legislation stating that no test shall be given in the absence of consent.

■ ■ In conclusion, we note that the exclusion of evidence of chemical test taken in violation of RSA 262-A:69-e (Supp. 1979) does not preclude the State from establishing that the accused was intoxicated. RSA 262-A:69-j explicitly preserves the right of the State to prove intoxication by other competent evidence. For the reasons herein stated, and because we believe the legislature to be the proper authority to correct any perceived deficiencies in RSA 262-AS:69-e (Supp. 1979), we hold that the results of a blood test taken in violation of the statute must be excluded from evidence in this case.

*Remanded.*

GRIMES, C.J., and BOIS, J., dissented; the others concurred.

GRIMES, C.J., and BOIS, J., dissenting: It is quite obvious that the sole purpose of RSA 262-A:69-e (Supp. 1979), which was first enacted in Laws 1965, 238:1, is to obtain more blood alcohol tests by inducing persons to consent to such tests. The entire thrust of the statute points to the need for consent and to the means of obtaining it.

In 1965, when the statute was first enacted, considerable doubt existed as to whether, under the fourth and fifth amendments to

the Constitution of the United States, the police could obtain a blood sample from an unwilling subject incident to an arrest. *Schmerber v. California*, 384 U.S. 757, 761 (1966), decided after the enactment of the implied consent law, held that a blood sample was not testimonial in nature and therefore not within the protection of the privilege against self-incrimination. The Supreme Court also held that the warrantless taking of blood from a person under arrest without his consent is not proscribed by the fourth amendment if there is probable cause to believe that the tests will show intoxication, if exigent circumstances exist which will excuse the obtaining of a warrant, and if the test is performed in a reasonable manner. *Id.* at 770–72. These conditions were satisfied in *Schmerber*. Thus, it became clear that the subject's consent to a test for blood alcohol was not necessary if the requirements of the fourth amendment were met. But the purpose of the statute was to obtain consent to tests which could not constitutionally be taken without consent.

There is nothing in the language of the statute or its legislative history which gives the slightest indication that the legislature intended to restrict or bar the taking of blood alcohol tests without the individual's consent when the State was not prohibited from doing so by the State and Federal Constitutions.

It is of course true that RSA 262-A:69-e (Supp. 1979) provides that if a person under arrest refuses to submit to a test for blood alcohol, "none shall be given." The majority construes these words as an absolute prohibition against the taking of blood samples without consent even when consent is constitutionally unnecessary and as requiring that the results of a test taken without consent be excluded from evidence. Although we recognize that this is a possible construction of the statute, we do not think that the legislature intended this result. We believe that the legislature intended to prohibit such testing without consent only when consent is necessary to comply with constitutional requirements.

Even assuming that RSA 262-A:69-e (Supp. 1979) does prohibit the taking of blood samples without consent in cases where the State and Federal Constitutions would allow them, we cannot read into the statute an intent to exclude the results of tests taken in violation of this provision. No such prohibition is found in RSA 262-A:69-e (Supp. 1979), although we do find an express provision for exclusion of the results in RSA 262-A:69-c for failure to inform the arrested person of his rights to have similar tests made and of the consequences of his refusal to consent. That exclusion, however, is confined to instances in which there is a failure "to comply with the provisions of *this section.*" (Emphasis added.) Similarly, RSA

262-A:69-i provides that "[n]o chemical tests authorized by RSA 262-A:69-a shall be considered as evidence . . . unless such test is performed in accordance with methods prescribed by the director of the division of public health." The inclusion of exclusion from evidence provisions in RSA 262-A:69-i and RSA 262-A:69-c, which are strictly confined to violations of those sections, and the omission of such a provision from RSA 262-A:69-e (Supp. 1979) is a clear indication that the legislature did not intend that the evidence be excluded because of the violation of that section.

Although we adhere to the exclusionary rule in cases of constitutional violations, we would not impose it in this case for a mere statutory violation absent a legislative mandate. We would remand the case for a hearing to determine whether the taking of the blood sample in this instance violated any constitutional provision and would exclude the evidence only if it did.

The fact that the court is so evenly divided as to the legislative intent clearly indicates a need for legislative clarification. Of course, the legislature can, if it wishes, permit tests without consent in cases where they are allowed by the State and Federal Constitutions and can also provide for the admission of the results obtained without consent. We, of course, express no opinion as to what should be done but only point out the need for a clearer expression of the legislature's intent.