429 So.2d 1229 (1983)
Samuel GRANT and Artise Grant, His Wife, Appellants,
v.
Jacob BROWN and Florida Insurance Guaranty Association, Appellees.
No. 82-376.
District Court of Appeal of Florida, Fifth District.
March 16, 1983.
Rehearing Denied April 21, 1983.
*1230 Aaron A. Green and Janet Smith Potter, of Aaron A. Green, P.A., Gainesville, for appellants.
C. Robert Edewaard, Gainesville, for appellees.
SHARP, Judge.
Samuel Grant and Artise, his wife, appeal from a final judgment, based on a jury verdict, which found Samuel twenty per cent (20%) comparatively negligent and Jacob Brown eighty per cent (80%) negligent in an automobile accident, and which awarded the Grants $5,500.00 in damages. The issue in this case, for which we have discovered no controlling precedent, is whether, in a personal injury case, the results of a blood test taken in a medical treatment situation showing a person's blood alcohol level should have been admitted to establish comparative negligence on his part when the test was not made in compliance with any of the requirements of sections 322.261 and 322.262, Florida Statutes (1979). We affirm.
At approximately 9:30 P.M. on a Friday night, Samuel Grant was driving north on State Road 25 (U.S. 441). He was driving within the speed limit, and at the intersection of U.S. 441 and Boardman Road, near McIntosh in Marion County, he clearly had the right of way. Brown apparently failed to stop at a stop sign, and he collided with Grant in the intersection. Grant testified he saw Brown's headlights through the trees as he was approaching. Grant pulled over toward the inner lane, but he said he did not see Brown's vehicle until an instant before the accident.
Grant was taken by ambulance to Shands Teaching Hospital. The police officers who investigated the accident testified they had no reason to think Grant was intoxicated. They did not request that a blood alcohol test be made on him.
While Grant was in the emergency room, blood samples were taken as part of the hospital's treatment effort. He arrived at the hospital at approximately 10:00 P.M. The blood samples were clocked in at approximately 12:15 A.M. Dr. Gudat, the technical director of the Shands Laboratory, testified that blood samples from the emergency room were treated as "emergencies," and were generally analyzed within thirty minutes of being taken. He also testified about how the tests are handled at Shands, their reliability, and the procedures used. The lower court admitted the tests as exceptions to the Hearsay Rule  section 90.803(6), Florida Statutes (1979) (Business Records). It also allowed Dr. Gudat to testify about the import of the test results, over objection by Grant's attorney.
Dr. Gudat testified that at approximately 12:15 A.M., Grant's blood alcohol level was .064. Going backwards in time to the accident at approximately 9:15 P.M., and allowing for a metabolic dissipation rate for the three intervening hours, Grant's blood alcohol level would have been .109, at the least, and .124, at the most, at the time of the accident. Based on Grant's size (240 pounds), Dr. Gudat testified he would have had to have consumed more than three beers to achieve that level. He also testified that persons with a .1 blood alcohol level have altered judgment and lowered will power. This can affect a person's perception of a dangerous situation.
*1231 The test results and Dr. Gudat's testimony were extremely damaging to Grant's case, because they provided Brown's counsel with virtually the only evidence of any contributory negligence on Grant's part. Brown was able to argue that Grant's reactions and perceptions were not as sharp as they should have been, and that, had he not been affected by alcohol, he could have avoided or minimized the accident. Further, Grant's credibility was somewhat impeached by this testimony because he had denied in a deposition before trial having any alcoholic drinks, and at the trial he claimed he had only two beers.
Prior to the advent of sections 322.261 and 322.262, scientific tests of intoxication were admissible in evidence without any statutory bar or authority, if a proper predicate was established. State v. Bender, 382 So.2d 697 (Fla. 1980). Brown established the test was scientific, reliable, done by qualified technicians with proper equipment, and interpreted by an expert.[1] The blood tests in this case were unquestionably admissible as part of Grant's hospital records. §§ 90.803(6) & (8), and 382.31, Fla. Stat. (1979).
Grant argues that the hospital records exception has been modified by sections 322.261 and 322.262 for blood-alcohol tests and the breath test provided for by those sections. Section 322.261 requires that the blood test be requested by a law enforcement officer, that the officer must have reasonable cause to believe the person was driving while under the influence of alcoholic beverages, and that the test be made in accordance with rules and regulations adopted by the Department of Health and Rehabilitative Services, in a certain manner, and by specified persons.[2] Section 322.262 provides that the results of tests taken pursuant to section 322.261 shall be admissible in

any civil or criminal action or proceeding arising out of acts alleged to have been committed by any person while driving ... a vehicle while under the influence of alcoholic beverages, when affected to the extent that his normal faculties were impaired. .. . (Emphasis added).
§ 322.262(2), Fla. Stat. (1979). The statute also provides that certain blood-alcohol levels will give rise to presumptions of non-impairment (.05 or less) or no presumption (more than .05 but less than .10) or impairment (.10 and above).
In a proceeding involving an adjudication of motor vehicle driver intoxication our sister court held that the test results are admissible in evidence only if the statutory requirements and administrative rules are followed. Campbell v. State, 423 So.2d 488 (Fla. 1st DCA 1982). We do not reach the issue raised in Campbell in this case because this is a civil proceeding involving a suit for personal injury. As in this case, the blood *1232 test was taken as part of the course of medical treatment in an emergency room, but not pursuant to section 322.261.
We do not think the Legislature intended to bar all but section 322.261 tests in the context of personal injury cases. Here comparative negligence is the issue. Driver impairment because of alcoholic consumption is a factor the jury was entitled to weigh and consider. Without a clearer mandate from the Legislature, we think the hospital records exception continues unaffected by section 322.261 or section 322.262 in personal injury cases. We also agree with the trial judge's refusal in this case to give an instruction based on the presumptions of impairment in section 322.262. It should not have been given absent a test in compliance with section 322.261.[3]
Accordingly, the judgment appealed is
AFFIRMED.
FRANK D. UPCHURCH, Jr. and COWART, JJ., concur.
NOTES
[1] Grant was unable to show any reason why the tests and results should not qualify as part of his hospital records. In fact, the remainder of Grant's hospital records were put in evidence by his attorney.
[2] The test determining the weight of alcohol in the defendant's blood shall be administered at the direction of the arresting officer in accordance with rules and regulations which shall have been adopted by the department. Such rules and regulations shall be adopted after public hearing, and shall specify precisely the test or tests which are approved by said department for reliability of result and facility of administration and shall provide an approved method of administration which shall be followed in all tests given under this section.
(b) Only a physician, registered nurse, or duly licensed clinical laboratory technologist or clinical laboratory technician, acting at the request of a peace officer, may withdraw blood for the purpose of determining the alcoholic content therein. Such withdrawal of blood shall be performed only at a hospital, clinic, or other medical facility. This limitation shall not apply to the taking of a breath specimen.
(c) The person tested may, at his own expense, have a physician, registered nurse, duly licensed clinical laboratory technologist or clinical laboratory technician, or any other person of his own choosing administer a test in addition to a test administered at the direction of a peace officer for the purpose of determining the amount of alcohol in his blood at the time alleged as shown by chemical analysis of his blood or breath. The failure or inability to obtain an additional test by a person shall not preclude the admissibility in evidence of the test taken at the direction of a peace officer.
§§ 322.261(2)(a), (b) & (c), Fla. Stat. (1979).
[3] On the cross-examination of Dr. Gudat, Grant's attorney got him to testify that the legal presumption of impairment was .10 and above. Because the tests showed Grant's level close to that or more, we fail to see how the requested instruction would have benefited Grant in any way.