429 So.2d 1313 (1983)
Rene PARDO, Appellant,
v.
STATE of Florida, Appellee.
No. 82-52.
District Court of Appeal of Florida, Fifth District.
April 20, 1983.
*1314 Richard A. Manzo and Ernest C. Wright of Manzo, Rogers & Wright, Titusville, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Sean Daly, Asst. Atty. Gen., Daytona Beach, for appellee.
COWART, Judge.
This case involves the admissibility in evidence in a criminal case of the result of a blood alcohol test taken without compliance with the provisions of sections 322.261 and 322.262, Florida Statutes (1981).
Appellant, operator of a vehicle at the time of a collision, was taken to a hospital where, although appellant was not under arrest[1] and had not been told that a failure to submit to a chemical test could result in the suspension of his driver's license, a blood specimen was taken at the direction of a Florida Highway Patrol officer and without objection by appellant. Later appellant's motion to suppress the result of a blood alcohol chemical test of the specimen was denied and the result of the test was admitted into evidence against appellant in a case involving two counts of manslaughter while driving while intoxicated. Appellant appeals this criminal conviction of manslaughter.
Appellant argues that if he is not first informed that his failure to submit to a chemical test will result in a three month suspension of his driving privilege as required by the last sentence of section 322.261(1)(a), Florida Statutes (1981), a chemical test for blood alcohol cannot be legally administered to him and that the result of any such illegally performed chemical test is inadmissible against him citing Sambrine v. State, 386 So.2d 546 (Fla. 1980). We read Sambrine to hold not that the giving of this warning is a prerequisite to a valid chemical blood alcohol test but is a prerequisite to the imposition of the three month suspension as a sanction for a driver's revocation of consent to a blood alcohol chemical test of his breath which consent is implied by section 322.261(1)(a) from the acceptance of the privilege of operating a vehicle in this state.
This is the conclusion reached in State v. Gunn, 408 So.2d 647 (Fla. 4th DCA 1981), which held that
A failure to inform a driver of the consequences of refusing to submit to testing will simply afford the driver an escape from suspension of driving privileges, should he, in fact, face such suspension by virtue of having refused testing.
Campbell v. State, 423 So.2d 488 (Fla. 1st DCA 1982), does not cite State v. Gunn and the two cases appear to be basically in conflict. We could distinguish Campbell in *1315 that, in holding a blood alcohol test inadmissible Campbell relies heavily on the fact that the specimen tested was not obtained at the request of the law enforcement officer while in this case the specimen was obtained at the direction of an officer. However, we believe that would be a superficial distinction as it would appear that the test result rejected in Campbell would be admissible as evidence under the rationale of Gunn because neither case involved a suspension of license for withholding the consent implied by statute to take a chemical test of breath for the purpose of determining the alcoholic content of the driver's blood.
We agree with Gunn because we start with the premise that the ability of consumed alcohol to impair normal human facilities is an accepted fact and that the reliability of certain chemical testing of blood to determine its alcoholic content is scientifically well established and, therefore, the result of such tests, when relevant, is, under general law, admissible in evidence. We further assume that there is no constitutional right in a citizen to protection from having a specimen of blood taken for testing purposes. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Even the admission into evidence of a refusal to submit to such a test does not violate a defendant's fifth amendment right against self-incrimination. South Dakota v. Neville, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983). This leads us to the conclusion that, subject to all other and usual qualifications and limitations relating to competency, relevancy and weight, the result of blood alcohol tests is admissible in civil and criminal proceedings quite independent of Sections 322.261 and 322.262, Florida Statutes (1981), or other statutory authority and that those statutes were primarily intended to relate to driver's licenses, to the privilege of operating a vehicle in this state and were enacted for the purpose of statutorily establishing the premise that one who drives in Florida impliedly agrees to give consent to an approved chemical test of his breath. Under these statutes if a driver does not consent after being warned of the consequences of his failure, his license may be suspended for three months as a sanction, and in connection with a proceeding to impose that sanction, the failure to warn or to otherwise comply with the requirements of these statutes may be asserted. Section 322.262(2) provides that the results of tests administered under these statutes are admissible in civil and criminal cases under certain circumstances and, if the tests conform to the statutory provisions, the result of the tests also gives rise to certain presumptions set out in section 322.262(2)(a) through (c). We read these statutes to provide for admissibility of tests made in accordance with their provisions and for use of the statutory presumptions, but we do not read these statutes to constitute a limitation on the admissibility of any competent evidence that would otherwise be admissible in any civil or criminal case in the absence of these statutes. Our opinion in Grant v. Brown, 429 So.2d 1229 (Fla. 5th DCA 1983), makes our position in this regard clear as to the use in civil cases of blood alcohol tests that do not comply with sections 322.261 and 322.262, and, by this opinion, we hold that similar tests likewise may be admissible in criminal cases if otherwise admissible. In short, as to civil and criminal cases other than those involving the suspension of driver's licenses as a sanction under this statute, we decline to apply a blanket exclusionary rule to the admissibility in evidence of the result of all blood alcohol tests that are otherwise admissible merely because they do not comply with the special requirements of these limited purpose statutes.
AFFIRMED.
FRANK D. UPCHURCH, Jr., J., concurs.
DAUKSCH, J., concurs specially with opinion.
DAUKSCH, Judge, concurring specially:
As the majority opinion says, appellant did not object to the police having some of his blood extracted for chemical testing. *1316 Indeed, he consented to the blood taking and testing after being told by the trooper that if he consented the blood was to be tested for alcohol content. The evidence fully supports the conclusion that appellant knew he was being investigated for D.W.I. manslaughter and I know of no Florida or federal constitutional right which is violated by a consensual blood taking. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Also, I agree Sambrine v. State, 386 So.2d 546 (Fla. 1980) is not to be applied to this case because the appellant consented to the taking of his blood. I disagree with Judge Hurley in his dissent in State v. Gunn, 408 So.2d 647 (Fla. 4th DCA 1981) where he says that suppression of the evidence is the only effective sanction to be imposed against the government when a policeman fails to advise the accused of the suspension provision in the implied consent law. I read the statute by putting emphasis on the implied consent part and conclude that if consent is given then "implied consent" never becomes operative. If consent is not given and the warning is not given then the government cannot suspend the driving privileges. If consent is given then no harm comes to the accused except that the results of the consensual chemical test are used against him at trial (I know that is not in the interest of the accused but it is not constitutionally violative, Schmerber, and is certainly within keeping with the truth-seeking purpose of a trial.) I view the implied consent law as a way to induce drivers to submit to the test but I do not consider the failure to advise of the penalty for failure to consent as affecting the state's right to take the evidence under Schmerber.
It is very difficult for me to distinguish Sambrine and perhaps the supreme court will tell me I cannot. I find especially difficult the implication in Sambrine that the legislature envisioned only two alternatives  implied consent and the accused's submission to the testing, or forceable taking. I think there is a third alternative which the legislature may very well have known about. That is actual consent as opposed to implied consent. That is what occurred in this case and I cannot agree that the legislature intended that a person should always be told that if he does not consent his driving privileges would be suspended. I think the police have the authority to take the breath or blood evidence where there is reason to believe the person has unlawfully caused the death of the victim or has critically injured the victim and there is a strong possibility of death. That is, there is probable cause to believe the person has committed a felony. I view implied consent as an additional tool for the state to enforce its traffic and criminal laws; it is not a restriction on the state. But I realize Sambrine could be read as a restriction.
In sum, I concur with the conclusion to affirm because I do not find any statutory or other requirement for the police to advise a suspected felony drunk driver of a right to refuse to submit to a blood alcohol test unless the state seeks to suspend the driving privilege. And because this case involves the express written consent of the driver, I do not think Sambrine applies.
NOTES
[1] The arrest of the subject is not a prerequisite to the taking of a blood sample. State v. Mitchell, 245 So.2d 618 (Fla. 1971); State v. Williams, 417 So.2d 755 (Fla. 5th DCA 1982).