FARMER, Judge.
A judge issued a search warrant alter an ex parte review of several affidavits filed as part of an application for the warrant by the Sheriff of Broward County.[1] The warrant authorized the seizure of the entire inventory and equipment of two video bookstores, effectively putting them out of business without any prior adversarial hearing or notice. The trial judge found no statutory impediment to this result, apparently because the sheriff disclaimed any interest in prosecuting these stores for obscenity violations, and denied a motion for a return of all property seized. We disagree and reverse.
The sheriff has had his eye on these video and bookstores since 1984. Originally, his focus was on suspected violations of the Florida obscenity statute.[2] In these cases, however, the sheriff has disclaimed any obscenity investigation and now points to suspected violations of Florida’s “lewdness” laws,[3] the prostitution laws,[4] the public nuisance law,[5] and the Florida Racketeer Influenced and Corrupt Organization [RICO] statute.[6] The RICO violation, itself a felony, may be predicated on misdemeanor offenses of prostitution.[7]
The Sheriff expressly based his search warrant on section 938.02, Florida Statutes (1991). Only subsections (2)(a) and (3)of section 933.02 are even theoretically applicable.[8] Subsection (2)(a) allows a search warrant to be issued “[w]hen any property shall have been used as a means to commit *563 any crime.”[9] Subsection (3) authorizes warrants when “any property constitutes evidence relevant to proving that a felony has been committed.” Thus, property used to commit any crime — whether felony or misdemeanor — may be seized under a warrant; while property merely constituting relevant evidence of a crime may be seized only if the suspected crime is a felony.
In this case, the warrant commanded the officers to seize the following described property (and we quote from the warrant itself):
“a. Sexually explicit videotapes either displayed or available for display in individual viewing booths which are located in the retail portion of the premises and/or in videocassette recorders connected to the individual viewing booths;
b. Video equipment, including televisions and video cassette recorders used to display the aforementioned videotapes in said viewing booths;
c. Computer equipment splitters used with the aforementioned video equipment to control the display of the videotapes;
d. Documents relating to the operation of the premises to be searched including, but not limited to, computerized records, inventory sheets, bank statements, purchase orders and employee logs, payroll receipts, utility bills, tax records, corporate documents, delivery records, and employee time sheets which may identify eo-conspir-ators and/or co-defendants;
e. Physical evidence relating to the use of the premises to be searched including, but not limited to, semen, condoms, cleaning agents, and sexual stimulants;
f. Periodicals referred to as “swinger” magazines which advertise available sexual partners either locally, statewide, or nationally.”
The gist of the sheriffs affidavits was that both of these stores rented videotapes or sold magazines depicting explicit sexual activity. The magazines are described as “swinger” magazines that contain “personal advertisements by individuals who seek new sexual partners, trade sexual partners, and/or engage in group sexual activity.” Typically, the affidavits said, these periodicals contain nude photographs of their correspondents exposing their genitalia.
The videotapes were described as displayed in individual “peep show” booths on the premises where they served “as a stimulus for prohibited sexual activity.” The booths each contain a television monitor connected to a central computer system, controlling the display of videotapes. A patron can view 14 different channels from each monitor, theoretically presenting a selection of 14 different tapes. Also available for sale on the premises was an assortment of “novelty items” or condoms, jellies, and lubricants.
In essence, the affidavits charged that most of the patrons were males, many of whom congregated near the booths. Some of the booths had a hole in the side-wall partition. Without actually claiming to have witnessed such an event, the affidavits charged that the partition holes were used to facilitate sexual activity between patrons of adjoining booths.[10] Some of the patrons would loiter near the booths and either attempt to follow another patron into a booth or attempt to initiate contact through the partition hole. The affiants swore that they had repeatedly seen used condoms, empty jelly/lubricant packets, wet tissue paper, and puddles of what they believed to be semen in some of the booths.
On the basis of this warrant, the sheriff was allowed to seize from both locations nearly 6,000 videotapes, 64 video recorders, 68 television monitors, 300 adult magazines, various sexual aids and stimulants, and a quantity of business records. It is undisputed that each store’s entire inventory of videotapes and magazines were taken under the warrants, as well as all of its operating equipment. It is also indisputable that the effect of this seizure was to shut down both stores. The custodians of the property of the two stores filed motions in the trial court seeking *564 a return of all property seized, arguing both statutory and constitutional improprieties. For all practical purposes, the court denied the petitions in their entirety.[11]
We address only the statutory failings. Since oral argument in these cases, we have affirmed the dismissal of the RICO counts against appellants and the owners of these stores. In State v. Kessler et al., 626 So.2d 251 (Fla. 4th DCA 1993), we affirmed the dismissal of the RICO counts upon a holding that the RICO statute does not apply to lewdness violations. The effect of the dismissal of the RICO counts is to remove any felony as a basis for the search warrant. That means that the property seized can be retained only if it constitutes property actually used to commit the misdemeanors alleged as the basis for the warrant. It is clear to us, however, that none of the property seized is capable of being used to commit the alleged misdemeanors.
Having disclaimed any obscenity violations, the state justifies the wholesale seizure on the basis of the alleged sexual encounters, pointing to one lewdness statute, section 800.03. We take the sexual acts and encounters in the booths to constitute the crime of lewdness. We do not believe that the expressive materials seized could — even by the most expansive construction possible of the statutes — reasonably be deemed “property [that has] been used to commit” the crime of lewdness.
Under such a construction, the crime of lewdness would have been committed — not by committing sexual acts in a place open to the public — but, instead, by simply exhibiting sexually explicit materials which have the effect of exciting a reader or viewer to commit the act. If such a construction were possible, then those interested in getting rid of sexually explicit materials have been wasting decades in the attempt to use obscenity laws. Their tool lay at hand all the while.
We cannot agree that such a construction of our lewdness laws is legally permissible. It is not possible to equate the books, tapes, television sets, and video tape machines seized with “instrumentalities” of the crime of lewdness. They might conceivably be relevant to proving that sexual acts and encounters take place in the booths, but they hardly were used to commit those acts. Because the crime thus charged is a misdemeanor rather than a felony, however, the property seized must be more than merely relevant. It must actually be used to commit the crime. As these expressive materials are incapable of being used to commit the crime of lewdness, it is obvious that the warrant does not comply with section 933.02(2)(a), and for that reason alone the property should have been returned.
While we have some sympathy with the difficulties facing law enforcement officers attempting to prosecute criminal organizations, our zeal to achieve the full enforcement of the law does not allow us to cast aside the requirements imposed by the legislature on the use of search warrants. In our opinion, there is no alternative to a reversal of the trial court’s orders. We direct that the property seized be returned forthwith to appellants without further delay.
REVERSED.
STONE and WARNER, JJ., concur.

. The sheriff's application for the warrant was accompanied by a memorandum of law prepared by the State Attorney for the Seventeenth Judicial Circuit. We conclude that there is no inherent mischief in supporting an application for a search warrant with an appropriate legal memorandum. The issuing magistrate may benefit from the prosecutor’s exposition of applicable search and seizure law and authorities.

. See § 847.01 l(l)(a), Fla.Stat. (1991). I note that under this statute the sale or distribution of obscene books or videotapes is a misdemeanor, not a felony.

. The term "lewdness” does not appear to have a constant meaning or context under the Florida Criminal Code. For example, chapter 800 is entitled "LEWDNESS; INDECENT EXPOSURE." Section 800.02 criminalizes "unnatural and lascivious act[s] with another” and makes a such violations misdemeanors. Section 800.03 makes it unlawful for any person "to expose or exhibit his sexual organs in any public place or on the private premises of another, or so near thereto as to be seen from such private premises, in a vulgar or indecent manner, or so to expose or exhibit his person in such place, or to go or be naked in such place." This violation is also a misdemeanor. Section 800.04 forbids certain conduct upon or in the presence of a minor; this provision, however, is a felony.
Chapter 798, entitled "ADULTERY; COHABITATION,” has a "lewdness” provision. Section 798.02 makes it illegal for "any man and woman, not being married to each other,” to "lewdly and lasciviously associate and cohabit together,” on the one hand, and also makes it illegal for any man or woman to engage in "open and gross lewdness and lascivious behavior * * *.” All of these chapter 798 offenses are misdemeanors.
At the same time, Chapter 796, entitled "PROSTITUTION”, has two provisions dealing with “lewdness”. Section 796.06 makes it illegal to rent any place or structure "with the knowledge that such place * * * will be used for the purpose of lewdness, assignation, or prostitution.” Section 796.07 makes certain specified conduct, which it defines as "prostitution", “lewdness”, and "assignation”, illegal. Violations of both sections 796.06 and 796.07 are misdemeanors.
We note that all of these lewdness offenses, except for the one dealing with children, constitute misdemeanors.

. See § 796.07(2)(a) and (c), Fla.Stat. (1991). Here again, we note that the suspected violation is a misdemeanor.

. See § 823.01, Fla.Stat. (1991). Violations of this statute are also misdemeanors.

. See § 895.03(3) and (4), Fla.Stat. (1991). Violations of this statute constitute a first degree felony. See § 895.04(1), Fla.Stat. (1991).

. See § 895.02(l)(a)17 and 29, Fla.Stat. (1991).

. As this case does not involve any suggestion of stolen or embezzeled property, subsection (1) is inapplicable. Similarly, there are no allegations of gambling violations, and subsection (2)(b) has no application. Subsection (2)(c), relating to obscenity offenses, is irrelevant because the sheriff has disclaimed any obscenity violations. This case has nothing to do with intoxicating liquors, fish and game violations, or food and drug violations, so subsection (4) is inapplicable. Finally subsection (5), relating to cruelty to animals, is also not implicated.

. Section 775.08(4), Florida Statutes (1991), provides that the term “crime” includes both a felony and a misdemeanor.

. The sheriff pointed to an arrest from such an event nearly a year before the issuance of the subject search warrant.

. The trial court did allow 350 videotapes to be returned to one of the bookstores. In the subject application, the custodians raised no claim that the seizure en masse constituted a taking of private property without just compensation within the meaning of the Fifth Amendment or its Florida counterpart, Article X, section 6, Florida Constitution.