70 So.3d 642 (2011)
STATE of Florida, Appellant,
v.
Gregory G. GEISS, Appellee.
No. 5D10-3292.
District Court of Appeal of Florida, Fifth District.
May 27, 2011.
Order Denying Rehearing and Certifying Question July 22, 2011.
*644 Pamela Jo Bondi, Attorney General, Tallahassee, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, for Appellant.
Angela Meriah Park and Ernest L. Chang of Law Office of Ernest L. Chang, P.A., Melbourne, for Appellee.
LAWSON, J.
The State appeals an order suppressing blood test results in a felony DUI case. After the defendant, Gregory Geiss, refused a breath test, police obtained a search warrant to draw a sample of his blood for testing. The trial court suppressed the blood results, concluding that obtaining a blood sample by search warrant violated: (1) Geiss's constitutional right to privacy, (2) the implied consent statute, and (3) the search warrant statute. We disagree with the first two conclusions but agree that the warrant should not have been issued under Florida's search warrant statute. However, we also find that the test results should not have been suppressed given law enforcement's good faith reliance on a judge's legal determination that the search was legally authorized. U.S. v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Accordingly, we reverse the suppression order and remand for further proceedings.

Underlying Facts and Standard of Review
On September 5, 2009, Geiss was stopped for failing to maintain a single lane. He refused a request to perform field sobriety exercises. After being arrested for DUI and informed of Florida's implied consent law, he also refused to take a breath test.
Police then obtained a search warrant to take a sample of Geiss's blood for testing. *645 The affidavit sought authority to take Geiss to the hospital "for the purpose of collecting property from the person of Gregory G. Geiss, to wit: two blood samples...." It further alleged that "[s]aid property was used to commit the offense [of DUI] ... a violation of section 316.193(1)(a), Florida State Statutes, Driving Under the Influence 2nd offense." The affidavit described Geiss's prior history as follows:
A computer check of Geiss's license status revealed four suspensions dating from 2006, including a 5-year revocation from 2008 for a DUI conviction with a BAC of [.]249. The computer check also showed Geiss had 1 prior DUI conviction from 2008 and a DUI Personal injury arrest from 2005 with a conviction of Leaving the Scene and Hit and Run Property Damage.
The affidavit alleged the pertinent facts of the arrest and concluded, "THEREFORE, your undersigned affiant states he has probable cause to believe that the blood samples being sought contain Alcohol or Controlled Substances and is property concealed in the body of the driver, Gregory G. Geiss, causing impairment, in violation of sections 316.193(1)(a) or 316.193(1)(b), Florida State Statutes, DUI 2nd."
A county judge issued the search warrant, noting that police were requesting blood samples "for the purpose of obtaining property that has been used as a means to commit the crime of Driving Under the Influence." Based on the warrant, police obtained a blood sample from Geiss. He was conscious throughout the entire process. There was no accident, injury or death involved in the traffic incident.
Geiss was later charged by information in circuit court with felony DUI based on two prior DUI convictions in 2005 and 2008, and with driving while his license was suspended. He filed a motion to suppress the blood evidence, asserting that it was illegally seized in violation of his federal and state constitutional rights to privacy and against unreasonable search and seizure, as well as Florida's implied consent law. Both parties filed memoranda of law regarding the issues raised. After hearing arguments on the matter, the court suppressed the blood results.
In a lengthy written order, the court concluded that obtaining Geiss's blood by search warrant violated his constitutional right to privacy, the implied consent statute, and the search warrant statute. The State timely appealed. As there are no facts in dispute, we review the trial court's application of the law to the facts de novo. State v. Quinn, 41 So.3d 1011, 1013 (Fla. 5th DCA 2010).

Right to Privacy Issue
The trial court erred in concluding that the search warrant violated Geiss's state constitutional right to privacy as expressed in article I, section 23 of the Florida Constitution. In pertinent part, article 1, section 23 provides that: "Every natural person has the right to be let alone and free from governmental intrusion into his private life except as otherwise provided herein." (Emphasis added). In other words, this provision cannot be interpreted without reference to other provisions in the Florida Constitution addressing governmental intrusion into one's private life.
Significantly, article 1, section 12 of the Florida Constitution requires that the state constitutional right against unreasonable searches and seizures "shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court." Because article 1, section 12 expressly authorizes governmental searches and seizures to the extent found to be reasonable under the Fourth Amendment *646 by the United States Supreme Court, the "except as otherwise provided herein" language of article 1, section 23 must be read as authorizing governmental intrusion into one's private life to the same measure. See L.S. v. State, 805 So.2d 1004, 1008 (Fla. 1st DCA 2001) ("Article I, section 23, does not modify the applicability of Article I, section 12, so as to provide more protection than that provided under the Fourth Amendment....") (citing State v. Hume, 512 So.2d 185, 188 (Fla.1987)). Thus, if the search warrant was valid under the Fourth Amendment, it cannot be barred by article I, section 23.
In Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), the United States Supreme Court held that obtaining blood samples for testing is a search under the Fourth Amendment, and is permissible if there is probable cause to believe the person was driving while intoxicated and the blood is extracted in a reasonable manner by medical personnel pursuant to medically approved procedures. The court recognized that search warrants are ordinarily required, but held that the rapid diminution of blood alcohol content over time creates an exigent circumstance exception to the warrant requirement. Id. at 770-71, 86 S.Ct. 1826; see also State v. Bender, 382 So.2d 697, 698 (Fla.1980) ("There is no constitutional impediment to a blood alcohol analysis with or without consent where probable cause has been established."); State v. Mitchell, 245 So.2d 618 (Fla.1971) (recognizing Schmerber as the law of the land), receded from on other grounds in Brackin v. Boles, 452 So.2d 540 (Fla.1984); State v. McInnis, 581 So.2d 1370, 1373 (Fla. 5th DCA 1991) (noting no Fourth Amendment right not to have blood drawn for testing); State v. Hilton, 498 So.2d 698, 699 (Fla. 5th DCA 1986) (same); State v. Williams, 417 So.2d 755, 756 (Fla. 5th DCA 1982) (same). Because police had probable cause to believe that Geiss was driving while intoxicated (a fact not contested on appeal), the blood draw did not run afoul of the Fourth Amendment,[1] and therefore did not violate Geiss's right under article 1, section 23 of the Florida Constitution.

Implied Consent Law
The trial court also erred in finding that the search in this case violated Florida's implied consent statute, section 316.1932, Florida Statutes (2009). This is because the search in this case was conducted pursuant to a warrant, and the *647 implied consent law deals only with warrantless searches.
Regarding blood draws, section 316.1932(1)(c) states that any person operating a motor vehicle in Florida is deemed to have given his or her consent to an approved blood draw for testing "if there is reasonable cause to believe the person was driving or in actual physical control of a motor vehicle while under the influence of alcoholic beverages ... and the person appears for treatment at a hospital, clinic or other medical facility and the administration of a breath test is impractical or impossible." § 316.1932(1)(c), Fla. Stat. (2009). A person's refusal to submit to a blood test under this provision is admissible as evidence in court and results in suspension of the driver's license. Id. The trial court concluded that the instant blood draw was not permissible under this section because Geiss did not appear for treatment at a hospital and there was no showing that a breath test was impractical or impossible.[2]
Florida cases have held that the implied consent statute imposes greater restrictions on obtaining blood samples without a warrant than federal and state constitutional search and seizure protections. See Sambrine v. State, 386 So.2d 546 (Fla. 1980) (holding that blood results obtained after defendant affirmatively refused request for blood violated implied consent statute irrespective of Schmerber); State v. Williams, 417 So.2d 755 (Fla. 5th DCA 1982) (noting holding in Sambrine that implied consent law "goes beyond" Fourth Amendment protection). The court in Sambrine took a broad view of the implied consent statute, holding that the "plain statutory language and obvious legislative intent" of former section 322.261 led to the "inescapable conclusion that a person is given the right to refuse testing." Sambrine, 386 So.2d at 548.
However, Florida's implied consent statute does not expressly prohibit obtaining blood by search warrant, or otherwise indicate any intent to invalidate judicial authority to issue a warrant as authorized in section 933.02, Florida Statutes. If the legislature had intended the implied consent statute to modify the warrant statute, it easily could have said so. For example, the implied consent statutes in some states expressly provide that if a person refuses to submit to a test, "none shall be given." See, e.g., State v. DiStefano, 764 A.2d 1156 (R.I.2000) (interpreting Rhode Island implied consent statute to prohibit police from obtaining blood with search warrant after suspect refuses test); State v. Berry, 121 N.H. 324, 428 A.2d 1250, 1251 (1981) (rejecting argument that legislature could not have intended implied consent law to prohibit police from obtaining blood pursuant to a search warrant based on "then none shall be given" language in statute); but see State v. Smith, 134 S.W.3d 35, 40 (Mo.Ct.App.2003) (holding that "then none shall be given" clause in implied consent statute was a passive command that applied to police officers acting without a warrant; it did not prohibit courts from issuing search warrants for blood). No such language is found in Florida's implied consent statute.[3] And, because the statute *648 has no such language, it is not our place to read into the statute a concept or words that the legislature itself did not include. See, e.g., Armstrong v. City of Edgewater, 157 So.2d 422, 425 (Fla.1963) (explaining that courts should only "add words to a statute" that have "obviously been omitted" and otherwise "cannot and should not" do so).
Another basic rule of statutory construction guides our analysis. As stated in Woodham v. Blue Cross & Blue Shield, Inc., 829 So.2d 891, 898 (Fla.2002): "`[w]here possible, courts must give full effect to all statutory provisions and construe related statutory provisions in harmony with one another.'" (quoting Forsythe v. Longboat Key Beach Erosion Control Dist., 604 So.2d 452, 455 (Fla. 1992). By reading the implied consent statute as dealing only with the circumstances addressed by that statutewhere the state seeks blood evidence in the absence of a warrantboth statutes are given "full effect."
We also note that Florida's appellate courts have upheld the admissibility of blood test results obtained independently of the implied consent statute in other contexts. For example, blood test results obtained by actual consent, independent of the implied consent statute, are admissible. Robertson v. State, 604 So.2d 783, 787 n. 1 (Fla.1992); State v. Murray, 51 So.3d 593 (Fla. 5th DCA 2011); State v. Young, 483 So.2d 31 (Fla. 5th DCA 1986); Pardo v. State, 429 So.2d 1313, 1315 (Fla. 5th DCA 1983). Our supreme court in Robertson also held that test results from blood withdrawn for medical purposes, independent of the implied consent statute, are admissible in a criminal trial. Given that, after deciding Sambrine, our supreme court held that the implied consent statute does not bar the admission of blood test results obtained independently from the statute in two other contexts, we do not see why the court would view results obtained by warrant differently.
In summary, because the legislature did not expressly prohibit seeking a search warrant to obtain blood upon a suspect's refusal; because we should not add that *649 language to the implied consent law ourselves; because we should attempt to give effect to both the implied consent and search warrant statute; and, because courts have upheld the use of blood test results obtained independently of the implied consent law in other contexts, we hold that police may obtain blood via search warrant, when authorized to do so by the search warrant statute, independent from the implied consent statute.

Search Warrant Statute
The trial court also found that the blood draw was not authorized by the warrant statute, section 933.02, Florida Statutes, because blood is not "property" used as a "means to commit" a crime. In addressing this issue, we should first clarify that although this case was ultimately filed as a felony case based upon Geiss's prior DUI record, the affidavit for the search warrant did not set forth Geiss's complete record, and only averred that Geiss possessed one prior DUI conviction. So, the affidavit alleged probable cause to believe that Geiss had violated the misdemeanor DUI statute. This is significant because section 933.02, Florida Statutes, only allows the state to secure a warrant to seize "property... used as a means to commit" a misdemeanor. § 933.02(2)(a), Fla. Stat. (2010). By contrast, the statute also authorizes the state to secure a warrant for "property [that] constitutes evidence relevant to proving that a felony has been committed." § 933.02(3), Fla. Stat. (2010); see also, Bordo, Inc. v. State, 627 So.2d 561, 562-63 (Fla. 4th DCA 1993) ("Thus, property used to commit any crime whether felony or misdemeanormay be seized under a warrant; while property merely constituting relevant evidence of a crime may be seized only if the suspected crime is a felony."). Because the affidavit below only alleged facts supporting probable cause for a misdemeanor DUI, the original issuing magistrate and the trial court reviewing the warrant in the case below properly considered only whether blood constituted "property ... used as a means to commit" the crime of DUI in this case. See, e.g., Martin v. State, 906 So.2d 358 (Fla. 5th DCA 2005) (limiting review to four corners of search warrant to determine whether sufficient probable cause existed). We agree with the trial court that it was not.
First, Geiss argues that blood is not "property" within the meaning of the statute. We reject this argument, and agree with the analysis of County Judge David E. Silverman (the same judge who signed the warrant in the instant case), who reasoned as follows in an order published in Florida Law Weekly Supplement:
The statute uses the word "property," a broad and flexible term that is not defined in the statute. It is a term that should properly be construed in the context of the statute's purpose of identifying items that are the proper subject of a search warrant. In that sense, "property" does not exclude those substances that are naturally produced by the human body. Human blood, whether it is being stored for later transfusion in a hospital refrigerator, being donated to a blood bank or flowing through the veins of an arrestee, is something tangible over which a person or entity may exercise ownership, which has value and which may be sold or transferred for consideration like other material objects. In those important respects, blood is indistinguishable from other fluid materials such as vodka, insulin or gasoline and like each of them may be seized, secured and subjected to chemical and other scientific analysis. The fact that it would require an invasive procedure to extract fluids from the human body does not alter the form or composition of *650 human blood or make it any less suitable a subject for a search warrant.
State v. Isley, 11 Fla. L. Weekly Supp. 1102a (Fla. Brevard County Ct.2004), aff'd, Isley v. State, Case No. 05-2004-AP-59852 (Fla. 18th Cir. Ct. 2005). Other Florida trial courts have reached the same conclusion. See State v. St. George, 16 Fla. L. Weekly Supp. 324a (Fla. Duval County Ct.2009); State v. McKinnon, 16 Fla. L. Weekly Supp. 329a (Fla. Duval County Ct.2009). This reasoning is persuasive. Blood may be extracted from the body and donated and/or sold for further use. And, blood has long been routinely seized for testing as evidence in many types of criminal cases. It only makes sense that the legislature would intend the term "property" to broadly include the types of physical items that would routinely be seized in connection with a criminal investigation.
However, we agree that blood is not "used as a means to commit" driving under the influence. Instead, blood is seized for its evidentiary value.[4] And, no one uses his or her blood "as a means to" do anything, as those words are commonly used or understood. Given that statutes should be construed in accordance with their "plain and ordinary meaning," Osborne v. Dumoulin, 55 So.3d 577, 581 (Fla. 2011) (citations omitted), and that search warrants must strictly conform to the statutes and constitutional provisions which authorize their use, State ex rel. Wilson v. Quigg, 154 Fla. 348, 17 So.2d 697, 701 (1944); Crain v. State, 914 So.2d 1015, 1020 (Fla. 5th DCA 2005) (en banc), we agree with the trial court that blood cannot be drawn based upon probable cause that a suspect has committed misdemeanor DUI in light of the plain language of section 933.02, Florida Statutes.

The Good Faith Exception
Having concluded that a blood draw warrant cannot be issued based upon probable cause that a suspect has committed misdemeanor DUI, we must now address whether the test results in this case should be suppressed. The State argues that even if the warrant was improperly issued, the blood test results should not be suppressed because the officer in this case was acting in good faith reliance on a judicial determination that the warrant was authorized. The State notes that in Isley, such a warrant had previously been upheld in the same jurisdiction as this offense by the Brevard County Court, and the Eighteenth Judicial Circuit Court. Although the trial court never addressed this issue, the State clearly raised it below.
The good faith exception holds that the exclusionary rule need not be applied when the officer conducting the search acted in objectively reasonable reliance on an invalid warrant. State v. Watt, 946 So.2d 108, 110 (Fla. 5th DCA 2007) (citing Leon). The test for good faith is "whether a reasonably trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 923 n. 23, 104 S.Ct. 3405.
Geiss argues that in Isley, Judge Silverman acknowledged that an appellate determination that a warrant is not authorized under the warrant statute or is barred by *651 the implied consent statute "may render the warrant so facially deficient as to preclude application of the Leon exception." However, at the time the warrant was issued in this case, there was no such appellate decision barring such warrants. To the contrary, Isley was an appellate opinion from the same circuit which allowed them.
Applying the Leon good faith exception, we find that the blood test results in this case should not have been suppressed. Accordingly, we reverse the order on appeal and remand for further proceedings.
REVERSED AND REMANDED.
COHEN, J., concurs.
TORPY, J., concurs in part and dissents in part, with opinion.
TORPY, J., concurring in part and dissenting in part.
I agree with much of what my colleagues have said. Were I reviewing this case against a pristine precedential backdrop, I would probably concur. Nevertheless, I am constrained to dissent to that portion of the opinion that addresses the effect of the implied consent statute, section 316.1932, Florida Statutes, in light of our high court's precedent in Sambrine v. State, 386 So.2d 546 (Fla.1980).[5] There, the court said that the implied consent law "leads to the inescapable conclusion that a person is given the right to refuse testing." Id. at 548. Based on this construction, it rejected the state's contention that the statute is inapplicable "where the blood test is taken incidental to a lawful arrest and where there is probable cause to take a blood test coupled with exigent circumstances." Id. The distinction that the majority makesthat the search here was conducted pursuant to a warrantis an inconsequential one. The holding in Sambrine is that the implied consent statute confers upon drivers in Florida greater protection against forced blood draws than that conferred by the constitutional prohibition against unreasonable searches. Simply stated, Sambrine holds that drivers have the right to refuse a blood draw even when the police are constitutionally authorized to forcibly take one. The warrant/warrantless distinction is only important in a Fourth Amendment analysis of what is reasonable. Whether or not police are authorized by warrant, or an exception to the warrant requirement, is immaterial to the issue of whether a citizen enjoys a statutory privilege to refuse a forced blood draw.
Contrary to the majority's assertion, a statutory construction analysis does not support its conclusion. The search warrant statute is a statute of general application. The implied consent statute is a statute of specific application. It is a fundamental statutory construction tenet that the specific controls over the general in seemingly conflicting statutes. Adams v. Culver, 111 So.2d 665, 667 (Fla.1959). If, as our supreme court has stated, the implied consent statute confers upon citizens the right to refuse a blood draw (except under circumstances enumerated in that statute, not applicable here), the general search warrant statute does not trump that right. Surely, had the implied consent statute conferred the right to refuse in express terms, the majority would give effect to the specific legislative directive, notwithstanding the general authorization to issue warrants. Here, though the language of the statute might not be explicit, *652 any uncertainty about its intent was resolved over thirty years ago by judicial interpretationan interpretation that the legislature has had numerous opportunities to reject in its numerous amendments to the statute. See Zommer v. State, 31 So.3d 733, 754 (Fla.2010) (legislature is presumed to know judicial constructions of a law and presumed to have adopted those constructions when amending that law unless contrary intention expressed when amending that law).
I do agree that blood is not the "means" by which the crime of DUI is committed. Therefore, as the majority concludes, the search warrant statute is not broad enough to authorize a warrant when misdemeanor DUI is the crime under investigation. I also agree that reversal is proper here based on the good faith exception to the exclusionary rule. The police acted in good faith: they did not mislead the issuing judge, nor omit material facts in the warrant application. The subsequent debate about the legal niceties of whether the warrant was authorized is one for judges, not police officers. That is why judges must review and approve warrant applications. To exclude the evidence under these circumstances serves no deterrent purpose. See Herring v. United States, 555 U.S. 135, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it.... [E]xclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."). Accordingly, I concur in the result.

ON MOTION FOR REHEARING AND CERTIFICATION
PER CURIAM.
We deny the State's motion for rehearing, but grant its motion to certify the following question pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v), as one of great public importance:
DOES SECTION 933.02(2)(a), FLORIDA STATUTES, PRECLUDE LAW ENFORCEMENT OFFICERS FROM SECURING A WARRANT FOR A BLOOD DRAW IN MISDEMEANOR CASES INVOLVING AN ALLEGATION THAT A SUSPECT HAS DRIVEN WITH AN UNLAWFUL BLOOD ALCOHOL LEVEL?
REHEARING DENIED; QUESTION CERTIFIED.
LAWSON and COHEN, JJ., concur.
TORPY, J., concurs in part and dissents in part, with opinion.
TORPY, J., concurring and dissenting.
I concur that we should certify a question in this case. I do not agree with the narrow question proffered by the State and adopted by the majority. In my view, this case is controlled by Sambrine v. State, 386 So.2d 546 (Fla.1980). There, our high court suppressed blood taken by force, concluding that the implied consent law "leads to the inescapable conclusion that a person is given the right to refuse testing." Id. at 548. In Sambrine, the search was warrantless. The threshold question here should be whether the use of a warrant to force a blood draw makes a difference. As I stated in my dissent, it doesn't. Police do not need a warrant to take blood by force if there is probable cause to believe it is evidence of a crime. Sambrine did not turn on the absence of a warrant; it was based entirely on the Court's conclusion that the implied consent statute established a statutory privilege to refuse a blood draw, even when police are *653 acting within the limits of the Fourth Amendment. The presence or absence of a warrant has no bearing on the scope of this statutory privilege. The question I would certify is as follows:
Is the right to refuse a forced blood draw under the implied consent law, as recognized in Sambrine v. State, viable when the blood draw is authorized by warrant? If not, may a warrant issue to seize blood when the police only have probable cause that a misdemeanor has been committed?
I am appreciative of the State's motive in presenting a narrow question, any answer to which leaves it in no worse position. Nevertheless, only an answer to the broader question will put an end to judicial labor on this topic.
NOTES
[1] Although the trial court found, and Geiss argues on appeal, that Schmerber is distinguishable from the instant case because the defendant in Schmerber had caused an accident with serious injuries and his blood was taken after he had already been transported to a hospital for treatment, Schmerber's holding has not been limited to such cases. See, e.g., State v. Slaney, 653 So.2d 422, 425 (Fla. 3d DCA 1995) (state appeal of misdemeanor DUI case involving one-car accident with no serious injury); McInnis (state appeal from four misdemeanor DUI cases with no mention of accidents, personal injury). The key consideration for Fourth Amendment purposes is whether probable cause exists to believe the defendant was driving under the influence of alcohol to the extent that his normal faculties were impaired. Mitchell, 245 So.2d at 622; State v. Kliphouse, 771 So.2d 16, 21 (Fla. 4th DCA 2000). Although the fact that a suspect caused an accident may be considered in determining probable cause, it is not necessary to establish probable cause. Rather, probable cause may be found by a combination of factors, including an "odor of alcohol on a driver's breath ... the defendant's reckless or dangerous operation of a vehicle, slurred speech, lack of balance or dexterity, flushed face, bloodshot eyes, admissions, and poor performance on field sobriety exercises." Kliphouse, 771 So.2d at 23 (footnote omitted). Thus, obtaining blood based on probable cause appears to be constitutionally permissible even in misdemeanor DUI cases not involving an accident or serious injury.
[2] The trial court also found that the blood draw was not authorized by section 316.1933(1)(a), which mandates that a police officer shall require a driver to submit to a blood test, by reasonable force if necessary, if the officer has probable cause to believe "that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages ... has caused the death or serious bodily injury of a human being." This section is not applicable because Geiss did not cause death or serious bodily injury.
[3] The State argues that other state appellate courts construing statutes comparable to ours have reached this same result, citing Smith, 134 S.W.3d at 40; Brown v. State, 774 N.E.2d 1001, 1007 (Ind.Ct.App.2002); Beeman v. State, 86 S.W.3d 613, 616 (Tex.Crim.App. 2002); and State v. Zielke, 137 Wis.2d 39, 403 N.W.2d 427, 428 (1987). Of these cases, Smith, Beeman and Zielke are not particularly instructive because courts in those jurisdictions have interpreted their implied consent statutes as affording no greater protection than afforded under the Fourth Amendment. However, the Indiana Court of Appeals, in Brown, did address the same issue we address here, and reviewing similar statutes in light of similar prior precedent held that its implied consent statute did not prohibit police from lawfully seeking a warrant to compel the seizure of blood for testing. In addition to its statutory construction analysis, the Brown court noted that reading the implied consent law's silence on the issue of search warrants as a proscription against obtaining them would place drunken drivers in an "exalted class of criminal defendants, protected by the law from every means of obtaining the most important evidence against them.'" Id. at 1007 (quoting Pena v. State, 684 P.2d 864, 869 (Alaska 1984) (Compton, J., dissenting)). We agree with the State that the reasoning in Brown is persuasive when applied to the analogous situation in Florida. We also find persuasive the following point made by the court in Beeman:

The implied consent law does just thatit implies a suspect's consent to a search in certain instances. This is important when there is no search warrant, since it is another method of conducting a constitutionally valid search. On the other hand, if the State has a valid search warrant, it has no need to obtain the suspect's consent .... [because] once a valid search warrant is obtained ... consent, implied or explicit, becomes moot.
Id. at 615-16 (footnotes and citations omitted).
[4] By contrast, when law enforcement seeks to seize property because it has been "used as a means to commit" a crime, one would expect that all of the property so used would be seized. Of course, seizing all of the blood from a body would present other constitutional challenges. But, the fact that law enforcement only sought "samples" clearly shows that they were seeking "evidence relevant to proving that a felony has been committed," which is only permissible when law enforcement has probable cause to believe that a felony has been committed.
[5] The State did not address Sambrine in its written submissions, despite reliance upon it by both the trial court and Appellee.