WARNER, J.
The state appeals an order granting the defendant’s motion to suppress the results of a blood test in connection with a charge of DUI causing injury to person or proper *487 ty. In its order, the court certified a question of great public importance:
When requesting a voluntary blood sample from a motorist suspected of driving under the influence, whether law enforcement must first read Florida’s implied consent warning and then further advise the suspect that said warnings are inapplicable?
We rephrase the question as follows:
Does the reasoning of State v. Iaco, 906 So.2d 1151 (Fla. 4th DCA 2005), which holds that failure to advise of the consequences of refusal to take a breathalyzer test does not warrant suppression of the tests in a criminal prosecution, apply to the failure to advise of the consequences of refusal to permit a blood test administered under section 316.1932(l)(c)?
As so phrased, we answer the question in the affirmative.
A law enforcement officer arrived at the Delray Community Hospital to perform a DUI investigation of appellee, Paul Dubiel, who was a patient and had been involved in an accident. The officer read Dubiel his Miranda rights and then asked Dubiel whether he would give a blood sample. Dubiel consented to the sample. The officer conceded that he did not advise him of the consequences of his failure to consent as explained in section 316.1932(l)(e). Du-biel was later charged with driving under the influence causing injury to person or property.
Dubiel moved to suppress the results of the blood drawn from him on various grounds. At the hearing, the sole issue presented to the court involved whether the results should be suppressed for failure to inform Dubiel of the consequences of a refusal to consent, as required by the statute. The court granted the motion to suppress, relying on Chu v. State, 521 So.2d 330 (Fla. 4th DCA 1988). While the state argued that the court should apply Iaco, the court declined to do so, because Iaco involved a breathalyzer test rather than the more intrusive blood draw. However, it agreed to certify the question to this court.
Iaco involved the construction of section 316.1932(l)(a), which sets forth the procedure for requesting a breath test incident to an arrest:
The person shall be told that his or her failure to submit to any lawful test of his or her breath will result in the suspension of the person’s privilege to operate a motor vehicle for a period of 1 year for a first refusal, or for a period of 18 months if the driving privilege of such person has been previously suspended as a result of a refusal to submit to such a test or tests, and shall also be told that if he or she refuses to submit to a lawful test of his or her breath and his or her driving privilege has been previously suspended for a prior refusal to submit to a lawful test of his or her breath, urine, or blood, he or she commits a misdemeanor in addition to any other penalties. The refusal to submit to a chemical or physical breath test upon the request of a law enforcement officer as provided in this section is admissible into evidence in any criminal proceeding.
In Iaco, just as in this case, the officer did not read this portion of the statute and advise the arrested person of the consequences of refusal to consent to the breath test. We relied on our prior opinions in State v. Gunn, 408 So.2d 647 (Fla. 4th DCA 1981), and Pardo v. State, 429 So.2d 1313 (Fla. 5th DCA 1983), and held that the statute set forth the penalties to be applied if the driver refused to consent. We said in Gunn, “We find no legislative intent to impose a further sanction on the state by excluding as evidence the results of a chemical test administered to a driver ... merely because of his not being in *488 formed, prior to testing, of the consequences should testing be refused.” Id. at 649. Accord Iaco; Pardo. See also State v. Young, 483 So.2d 31, 34 (Fla. 5th DCA 1985) (“Even if no warning is given at all, the results of a consensual breath test are admissible in evidence at defendant’s trial.”).
The issue presented in this case is whether the same result obtains when an officer fails to inform of the consequences of refusal to undergo a blood test, rather than a breath test. Section 316.1932(l)(c) applies to blood tests. The language of the statute is nearly identical to that of section 316.1932(l)(a). Section (l)(c) provides:
Any person who is capable of refusal shall be told that his or her failure to submit to such a blood test will result in the suspension of the person’s privilege to operate a motor vehicle for a period of 1 year for a first refusal, or for a period of 18 months if the driving privilege of the person has been suspended previously as a result of a refusal to submit to such a test or tests, and that a refusal to submit to a lawful test of his or her blood, if his or her driving privilege has been previously suspended for a prior refusal to submit to a lawful test of his or her breath, urine, or blood, is a misdemeanor. The refusal to submit to a blood test upon the request of a law enforcement officer is admissible in evidence in any criminal proceeding.
Where the same words or phrases are used in two statutes, we may assume that the legislature intended them to mean the same thing. See Goldstein v. Acme Concrete Corp., 103 So.2d 202, 204 (Fla.1958). Both statutes require the same penalty for refusal to submit to either test, and neither indicates a legislative intent to impose any greater consequences for failure to instruct on the consequences of refusal. Therefore, just as in Iaco, Gunn, and Par-do, we find that failing to advise of the consequences of refusal to allow a blood test does not warrant suppression of the results in a criminal proceeding.
The trial court relied on Chu v. State, 521 So.2d 330 (Fla. 4th DCA 1988), in granting the motion to suppress. Chu is distinguishable. The issue addressed in Chu involved a blood test administered outside of a hospital or other medical facility. Our court held that the legislature intended to provide for the use of breath and urine tests, except under circumstances described in sections 316.1932(l)(c) and 316.1933(1). Under those sections, blood tests may be requested in a hospital or other medical facility. Where those conditions do not exist, the legislature did not intend to authorize law enforcement to request a blood test. Despite this, our court refused to exclude a blood test requested outside a medical facility if that test was the result of voluntary consent with full knowledge that the implied consent laws required submission only to a breath or urine test and that the blood test was being offered as an alternative. Thus, the two cases are factually different, as Dubiel was in the hospital when the blood was requested. The blood test in Chu was not legislatively authorized, whereas the blood test here was.
We therefore answer the certified question in the affirmative, quash the order suppressing the blood test results, and remand this case to the county court for further proceedings.
GUNTHER and FARMER, JJ„ concur.