ORFINGER, J.
 

 While allegedly street racing, Daniel Murray and James Brink were involved in a crash that killed another motorist. As a result, the State charged both men as principals to vehicular homicide. The State now appeals the trial court’s order suppressing the test results obtained from the blood drawn from both men. Because Murray and Brink voluntarily consented to the blood draw, we reverse.
 

 A motion to suppress involves mixed questions of law and fact.
 
 See, e.g., Seibert v. State,
 
 923 So.2d 460, 468 (Fla.2006);
 
 Dewberry v. State,
 
 905 So.2d 963, 965 (Fla. 5th DCA 2005). In reviewing the trial court’s ruling on such a motion, an appellate court must determine whether competent, substantial evidence supports the lower court’s factual findings, but the trial court’s application of the law to the facts is reviewed de novo.
 
 Connor v. State,
 
 803 So.2d 598, 606-08 (Fla.2001).
 

 The facts related to the blood draw are largely undisputed. After the crash, Murray and Brink remained at the scene. The investigating state troopers testified that neither man appeared to be impaired nor smelled of alcohol. Consequently, the troopers concluded that they had no probable cause to arrest either man for driving under the influence or to request a breath, urine or blood sample from them. Nonetheless, they asked both men to voluntarily provide blood samples. The troopers advised the men that the blood would be tested for the presence of alcohol and drugs and that the potential for criminal charges arising from the crash existed. No implied consent warnings were given. Both men signed written consent forms, acknowledging that they had given permission for the blood draw.
 

 The trial court denied Murray and Brink’s first joint motion to suppress, finding that they had voluntarily consented to the blood draw. However, the court granted Murray and Brink’s second joint motion to suppress. Relying on
 
 Chu v. State,
 
 521 So.2d 330 (Fla. 4th DCA 1988), the court concluded that despite Murray’s and Brink’s voluntary consent to the blood draws, suppression was required because they should have been informed that the implied consent law requires submission only to a breath or urine test, and that a blood test is offered only as an alternative. On appeal, the State does not dispute the trial court’s factual findings; rather, it contends that
 
 Chu
 
 is either distinguishable or wrongly decided. Specifically, the State argues that because the implied consent laws were not implicated in this case, the troopers were not required to inform Murray and Brink about the provisions of implied consent. We agree.
 

 In
 
 Chu,
 
 the defendant was involved in a one-car traffic accident in which her car
 
 *595
 
 overturned. Emergency medical personnel were the first to arrive at the scene, but Chu was uninjured. The investigating trooper testified that Chu was cooperative, but had a strong odor of alcohol on her breath, and, at times, appeared to be incoherent. As a result, the trooper asked her to submit to a blood test at the scene. The implied consent warning was read to her and the trooper obtained written consent from Chu for the blood test. The trooper testified that he opted for the blood test instead of a breathalyzer test because the paramedics were already there and he thought it would be the easiest and most accurate way to test her. There was no question that Chu was not going to be transported to the hospital.
 

 After the test results were received, the State charged Chu with driving under the influence of alcohol. The trial court denied Chu’s motion to suppress the blood alcohol test, after which she entered a no contest plea, reserving for review the trial court’s ruling. The fourth district affirmed, but held:
 

 We think it is clear that the legislature intended and provided for the use of breath and urine tests, except under the circumstances described in sections 316.1932(l)(c) and 316.1933(1) and that the legislature did not intend to authorize a law enforcement officer to request a blood test when the conditions described in these statutes do not exist. However, we also recognize that circumstances may occur where it is more convenient for a person to submit to a blood test rather than a breath or urine test.
 
 Under such circumstances we see no reason to exclude a voluntary blood test provided the person has been fully informed that the implied consent law requires submission only to a breath or urine test and that the blood test is offered as an alternative
 
 ....
 

 Id.
 
 at 332 (emphasis added).
 

 Chu
 
 can be easily distinguished, although its holding likely sweeps too broadly. Unlike
 
 Chu,
 
 this case does not involve implied consent. In
 
 Chu,
 
 the trooper had probable cause to believe that she had been driving while under the influence of alcohol. No such evidence existed in this case. Hence, the limitations on blood testing found in section 316.1932(1)(c), Florida Statutes (2007), and section 316.1933(1)(a), Florida Statutes (2007), are not implicated because this test was done outside the scope of the implied consent law.
 
 [1]
 

 The implied consent statute and its exclusionary rule “apply only when blood is being taken from a person based on probable cause ... as a result of a DUI offense specified in the statutes.”
 
 Robertson v. State,
 
 604 So.2d 783, 790 n. 7 (Fla.1992).
 
 [2]
 
 A person only receives the protection of the implied consent law if the testing provisions of that law are being utilized by the state. “If the defendant has con
 
 *596
 
 sented to the test ... then the blood test falls wholly outside the scope of the implied consent law.”
 
 Id.
 
 at 790.
 
 [3]
 

 The implied consent law is not the exclusive manner by which blood tests may be admitted into evidence. As the United States Supreme Court held in
 
 Schmerber v. California,
 
 384 U.S. 757, 771, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), if a blood test “was performed in a reasonable manner,” the results should be admissible under traditional common law rules. If
 
 Chu
 
 is read to require a contrary result, we acknowledge our direct and express conflict with it.
 

 Because both Murray and Brink voluntarily consented to the blood draw, the suppression order is reversed.
 

 REVERSED and REMANDED.
 

 MONACO, C.J. and GRIFFIN, J., concur.
 

 [1]
 

 . The implied consent law, section 316.1932(1)(a)1.a.f Florida Statutes (2007), provides that a person who accepts the privilege of operating a motor vehicle in this state is deemed to consent to testing to determine the "alcoholic content of his or her blood or breath if the person is lawfully arrested....” Further, section 316.1932(1 )(c), Florida Statutes (2007), authorizes blood withdrawals where an officer has probable cause to believe that the driver was impaired and the driver appears for treatment at a medical facility and the administration of a breath or urine test is impractical or impossible. Likewise, section 316.1933(l)(a), Florida Statutes (2007), expressly authorizes blood tests where an officer has probable cause to believe an impaired driver has caused death or serious injury to a human being. Here, Murray and Brink were not under lawful arrest and did not seek medical treatment, and the troopers did not have probable cause to believe that they were impaired. Consequently, the implied consent law was clearly not implicated.
 

 [2]
 

 . While
 
 Robertson
 
 involved section 316.1933(1)(a), the provisions of section
 
 *596
 
 316.1932(l)(a)l.a. and (c), not at issue in
 
 Robertson,
 
 would also trigger implied consent.
 

 [3]
 

 . If the provisions of the implied consent law are not utilized by the state, then the state is not entitled to rely on any of the presumptions created by the implied consent law and the admissibility of the results is dependent on the three-prong predicate described in
 
 State v. Bender,
 
 382 So.2d 697 (Fla.1980).