DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**STATE OF FLORIDA,**
Appellant,

v.

**GEORGE F. MARSHALL, III,**
Appellee.

No. 4D2024-1115

[August 13, 2025]

Appeal of nonfinal order from the County Court for the Seventeenth Judicial Circuit, Broward County; John D. Fry, Judge; L.T. Case No. 23-002859MU10A.

James Uthmeier, Attorney General, Tallahassee, and Richard Valuntas, Senior Assistant Attorney General, West Palm Beach, for appellant.

Jeremy J. Kroll of Dutko & Kroll, P.A., Fort Lauderdale, for appellee.

PER CURIAM.

The State appeals the trial court's order suppressing Appellee George F. Marshall, III's blood test results in a DUI misdemeanor prosecution. The trial court made conflicting findings as to whether Florida's "implied consent" law applied and whether Appellee had "voluntarily consented" to the blood draw. As explained below, given the inconsistencies, we quash the trial court's order and remand for the trial court to revisit the issues of "implied consent" and "voluntary consent" in a new order.

**Background**

As Appellee was driving, his vehicle struck a pedestrian. The pedestrian died at the accident scene. Ultimately, a traffic homicide investigator concluded Appellee had "neither caused nor contributed to this accident," noting evidence that the pedestrian had been intoxicated and jaywalking when he suddenly ran into oncoming traffic.

At the accident scene, several investigating officers observed signs of Appellee's own intoxication, primarily the odor of an alcoholic beverage emanating from his person. Appellee readily admitted he had consumed

alcoholic beverages earlier in the day. A Fort Lauderdale Police Department DUI unit officer asked Appellee to consent to a blood draw because Appellee showed signs of impairment and because the accident had involved, at a minimum, serious bodily injury.

Neither the officer nor Appellee testified that Appellee had been told he "had to" submit to a blood draw. The DUI officer never provided *Miranda* warnings because Appellee was not under arrest, nor did the officer explicitly tell Appellee that the officer was conducting a DUI investigation.

When requested to give a blood sample, Appellee asked if he had any alternatives. The officer failed to respond to this question, but told Appellee that "it's his right" not to submit to a blood draw.

Ultimately, Appellee submitted to the blood draw. Thereafter, he signed a consent form for that blood draw. The signed form is not in the record. However, the DUI officer testified that the form does not state a person has a constitutional right to refuse the blood test.

Appellee's blood was drawn twice at the accident scene and the results showed his blood alcohol level was .142 and .138, both above the legal limit. The State ultimately charged Appellee with misdemeanor driving under the influence.

Appellee moved to suppress the blood draw results, arguing he had not "consented" to that draw and Florida's "implied consent" law did not apply because Appellee did not cause or contribute to the accident. The State responded that Appellee had voluntarily consented to the draw and, alternatively, Appellee had given "implied consent" to an involuntary blood draw.

The trial court granted Appellee's motion to suppress, making several findings regarding the blood draw. First, the trial court suppressed Appellee's admission to the DUI investigating officer that Appellee had consumed alcoholic beverages earlier that day.[1] Next, the trial court ruled that "the blood draw was voluntarily entered into by" Appellee. The trial court nonetheless concluded the State had lacked probable cause to blood test Appellee even though (1) several officers testified that they had detected the odor of an alcoholic beverage emanating from Appellee; (2) one officer observed Appellee's eyes appeared "red and watery"; and (3) when Appellee had submitted to the blood draw, an investigation was ongoing as to whether Appellee's driving was the legal "cause" of the pedestrian's death.

---

[1] The State's appeal does not challenge this ruling.

2

The State's appeal of the trial court's suppression order follows.

## Analysis

The State argues the trial court erred because: (1) Appellee had voluntarily provided a blood sample; and (2) the State was not required to establish probable cause when Appellee had consented to the blood draw, making Florida's implied consent law inapplicable under the case's facts.

"We generally review an order on a motion to suppress under 'a mixed standard of review, deferring to the trial court's factual determinations but reviewing de novo its application of the law to the facts of the case.'" *State v. Barone*, 374 So. 3d 31, 33 (Fla. 4th DCA 2023) (quoting *State v. T.M.*, 248 So. 3d 172, 173 (Fla. 4th DCA 2018)).

### Florida's Implied Consent Law

Several statutes address Florida's "implied consent" landscape and under what circumstances law enforcement officers are permitted or required to obtain blood tests for the State's use, regardless of the driver's consent. *See* §§ 316.1932(1)(a) & (c), 316.1933, Fla. Stat. (2023). "The implied consent statute and its exclusionary rule 'apply only when blood is being taken from a person based on probable cause . . . as a result of a DUI offense specified in the statutes.'" *State v. Murray*, 51 So. 3d 593, 595 (Fla. 5th DCA 2011) (omission in original) (quoting *Robertson v. State*, 604 So. 2d 783, 790 n.7 (Fla. 1992)). A footnote in *Murray* clarified that "[w]hile *Robertson* involved section 316.1933(1)(a), the provisions of section 316.1932(1)(a)1.a. and (c), not at issue in *Robertson*, would also trigger implied consent." *Murray*, 51 So. 3d at 595 n.2.

*Section 316.1932(1)(a)* applies when the blood test is "incidental" to a lawful arrest and conducted "at the request of a law enforcement officer who has reasonable cause to believe [the individual] was driving or was in actual physical control of a motor vehicle while under the influence" of alcoholic beverages. § 316.1932(1)(a), Fla. Stat. (2023). Section 316.1932(1)(a) also requires the driver to be informed that refusal to submit to a blood test will result in consequences to his or her driver's license privileges. *Id.*

Here, Appellee was not "lawfully arrested" *before* the blood test was performed, nor informed of the refusal consequences as outlined within section 316.1932(1)(a). *Dep't of High. Saf. & Motor Veh. v. Whitley*, 846 So. 2d 1163, 1167 (Fla. 5th DCA 2003) (recognizing that a lawful arrest must precede administration of the breath test).

3

*Subsection 316.1932(1)(c)* applies when the driver appears at a hospital or medical facility for treatment. Appellee's blood draw occurred in a fire rescue ambulance parked at the accident scene, not at a hospital or medical facility.

*Section 316.1933* requires law enforcement to perform a blood test if the officer has "probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages, any chemical substances, or any controlled substances *has caused the death or serious bodily injury of a human being.*" (emphasis added). "Evidence that a driver was drinking coupled with evidence that the driver caused a serious or fatal accident suffices for probable cause to compel a blood draw under section 316.1933(1)." *State v. Acevedo,* 366 So. 3d 1096, 1100 (Fla. 4th DCA 2023).

Here, officers were investigating the circumstances of the pedestrian's death when Appellee's blood draw occurred. The State ultimately concluded Appellee did not cause the pedestrian's death. Nevertheless, the State argues—as an alternative to its "voluntary consent" theory—that the DUI officer had "probable cause" to believe Appellee was under the influence based on observed signs of impairment (alcohol odor, red and watery eyes) and because Appellee's car *caused* the pedestrian's death. The trial court rejected this argument, finding a lack of probable cause to believe Appellee was under the influence, because the investigating officer had detected the odor of an alcoholic beverage coming from Appellee, as distinguished from *Acevedo,* which involved "a *strong* odor." *Acevedo,* 366 So. 3d at 1100 (emphasis added).

**Voluntary Consent**

"Whether consent is voluntary is a question of fact determined by the totality of the circumstances." *Id.* at 1099. "The State has the burden of showing the voluntariness of consent by a preponderance of the evidence, and this burden is not satisfied by a mere submission to authority." *Id.* "Whether consent was freely and voluntarily given is determined by the totality of the circumstances." *Miller v. State,* 250 So. 3d 144, 145 (Fla. 1st DCA 2018).

Here, the trial court made conflicting findings regarding consent. While *explicitly* finding Appellee had voluntarily consented to the blood draw, the trial court appears to have also negated the "voluntariness" element by reference to our opinion in *Chu v. State,* 521 So. 2d 330 (Fla. 4th DCA 1988).

4

*Chu* involved a blood test administered outside of a hospital or other medical facility. 521 So. 2d at 331. We refused to exclude a blood test requested outside of a medical facility if that test was the result of voluntary consent *and* "provided [that] the person has been fully informed that the implied consent law requires submission only to a breath or urine test and that the blood test is offered as an alternative." *Id.* at 332.[2]

Post-*Chu*, one of our sister courts took a different approach. In *State v. Murray*, 51 So. 3d 593 (Fla. 5th DCA 2011), the Fifth District Court addressed a situation similar to the instant case.

There, the defendants were involved in a crash that killed another driver. *Id.* at 594. Although neither defendant appeared to be impaired or under the influence of alcoholic beverages, the police asked the defendants to voluntarily provide blood samples. *Id.* No implied consent warnings were given, and the defendants signed written consent forms. *Id.*

Despite the defendants' "voluntary consent to the blood draws," the trial court granted their motion to suppress "because they should have been informed that the implied consent law requires submission only to a breath or urine test, and that a blood test is offered only as an alternative." *Id.* The trial court in *Murray* based its ruling on *Chu*.

On appeal, the Fifth District reversed. The appellate court concluded *Chu* was "easily distinguished" because *Chu* involved implied consent— "the trooper [in *Chu*] had probable cause to believe that [the defendant] had been driving while under the influence of alcohol." *Murray,* 51 So. 3d at 595. "No such evidence existed in [*Murray*]." *Id.*

Because the *Murray* defendants "were not under lawful arrest and did not seek medical treatment, and the troopers did not have probable cause to believe that they were impaired . . . the implied consent law was clearly not implicated." *Id.* at 595 n.1; *see also Montes-Valeton v. State*, 216 So.

---

[2] In the past decade, we have dispensed with limiting "voluntary consent" to situations where the consenting party had "full knowledge that the implied consent laws required submission *only* to a breath or urine test and that the blood test was being offered as an alternative." *State v. Dubiel*, 958 So. 2d 486, 488 (Fla. 4th DCA 2007). *See Dep't of High. Saf. & Motor Veh. v. Davis*, 264 So. 3d 965, 967 (Fla. 4th DCA 2019); *State v. Meyers*, 261 So. 3d 573, 574 (Fla. 4th DCA 2018) ("Here, because Appellee consented to the blood test and nothing in the record indicates that his consent was involuntary, the provisions of Florida's implied consent law did not apply."). These opinions and *Dubiel* either explicitly (*Davis* and *Dubiel*) or implicitly (*Meyers*) distinguished *Chu* based on the blood in those cases having been drawn in a hospital rather than at the scene, as was the case in *Chu.*

3d 475, 480 (Fla. 2017) (quoting *Murray* to support the Court's holding that, because the law enforcement officer had "lacked probable cause to require the blood draw under section 316.1933(1)(a), neither the implied consent warnings nor Florida's implied consent law applied to [the defendant]").

*Murray* highlighted that "[a] person only receives the protection of the implied consent law if the testing provisions of that law are being utilized by the state. 'If the defendant has consented to the test . . . then the blood test falls wholly outside the scope of the implied consent law.'" *Murray*, 51 So. 3d at 595–96 (omission in original) (quoting *Robertson*, 604 So. 2d at 790).

## Conclusion

Based on our review of the suppression hearing transcript, we are unable to discern the trial court's rationale for granting the motion. The trial court's statement that Appellee had "voluntarily consented" to the blood draw appears at odds with the court's ultimate ruling. The trial court also found that the State had lacked probable cause to request the blood draw, but the trial court did not elaborate as to whether *Murray*, rather than *Chu* (and its implied consent analysis), is, consequently, applicable to the instant case.

Accordingly, we quash the trial court's suppression order and remand for the trial court to either apply *Murray* or explain the basis for not doing so, and render a new determination consistent with that application.

*Quashed and remanded.*

WARNER, DAMOORGIAN and FORST, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***

6