569 So.2d 861 (1990)
Willard Carl ROBERTSON, Appellant,
v.
STATE of Florida, Appellee.
No. 89-1766.
District Court of Appeal of Florida, Fifth District.
November 8, 1990.
James B. Gibson, Public Defender, and Barbara L. Condon, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Belle B. Turner, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
This is the appeal of a conviction for DUI/manslaughter and leaving the scene *862 of an accident. Appellant has raised several issues on appeal, only one of which warrants discussion.
Shortly after the accident, blood samples were taken from appellant, and were subsequently tested, at the direction of an investigating officer, based on her belief that the driver was intoxicated. At trial, appellant objected to the admission of the results of the blood alcohol tests on the ground that the person who performed the test, Dr. Wayne Duer, was not certified by HRS as required by statute. Section 316.1933(1), Florida Statutes (1987), provides:
(1) Notwithstanding any recognized ability to refuse to submit to the tests provided in s. 316.1932 or any recognized power to revoke the implied consent to such tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by or in the actual physical control of a person under the influence of alcoholic beverages, any chemical substances, or any controlled substances has caused the death or serious bodily injury of a human being, such person shall submit, upon the request of a law enforcement officer, to a test of his blood for the purpose of determining the alcoholic content thereof... . (emphasis added)
Subsection (2)(b) of section 316.1933, Florida Statutes (1987) contains the restriction relied upon by appellant:
A chemical analysis of the person's blood to determine the alcoholic content thereof must have been performed substantially in accordance with methods approved by the Department of Health and Rehabilitative Services and by an individual possessing a valid permit issued by the department for this purpose. The Department of Health and Rehabilitative Services may approve satisfactory techniques or methods, ascertain the qualifications and competence of individuals to conduct such analyses, and issue permits which will be subject to termination or revocation at the discretion of the department. (emphasis added)
See also § 483.141, Fla. Stat. (1987). It is undisputed that Dr. Duer did not have the required permit. The state's position is that the requirements of the statute were satisfied because Dr. Duer's work was supervised by a licensed analyst, Dr. Lynn Bowman.[1]
Dr. Duer testified to his credentials at trial: a bachelor's degree in mathematics, a masters degree in organic chemistry and a doctorate in physical chemistry. He had formerly taught analytical chemistry at the University of Florida and had worked in racehorse blood analysis for the State Department of Business Regulation for ten years. He had been employed by the Florida Department of Law Enforcement ("FDLE") since December, 1986 and had begun analyzing substances for alcohol content in July, 1988.
Appellant's blood was received by Dr. Duer on July 6, 1988 and was tested on August 5, 1988. Dr. Bowman testified that the testing was conducted as part of Dr. Duer's training. Dr. Bowman would tell Dr. Duer what to do; Dr. Duer would obtain the results of the tests, and Dr. Bowman would review them. Dr. Bowman signed the laboratory report. While Dr. Duer was conducting the test procedures, Dr. Bowman was in the same laboratory, observing Dr. Duer and speaking with him while the test was going on, although he was not in Dr. Duer's presence at all times. The trial court found this procedure substantially complied with the statutory requirements but suggested to the state that, in the future, the FDLE should not do laboratory training on homicide cases. On this record, we agree with the trial court and adopt its recommendation. Nevertheless, we recognize that criminal statutes are to be construed in favor of accused persons and that whether the certification requirements of 316.1933 can be satisfied through supervision is a close question. Because the record suggests that what happened here was consistent with (then) prevailing FDLE procedures, we conclude this issue should be certified as a matter of *863 great public importance to our supreme court.
There is an alternative basis for our affirmance. At least one other court has concluded that the requirements of section 316.1933, Florida Statutes, need not be met at all so long as the state has probable cause to extract and test a driver's blood. In State v. Quartararo, 522 So.2d 42 (Fla. 2d DCA), rev. denied, 531 So.2d 1354 (Fla. 1988), the Second District Court of Appeal read State v. Strong, 504 So.2d 758 (Fla. 1987), to hold test results admissible without regard to the requirements of section 316.1933, Florida Statutes, provided the state could satisfy the traditional predicates for admissibility, including test reliability, the technician's qualifications, and the test results' meaning. Based on Strong and Quartararo, it appears that section 316.1933 either merely creates a convenient shorthand evidentiary device for admission of testing done in compliance with the statute, or it establishes minimal standards for admissibility of testing in DUI cases where there is probable cause to believe the subject of the test has caused serious personal injury to others. Certainly, if the legislature intended merely to create an additional conduit for admission of blood alcohol test results, by choosing the above-quoted statutory language, it did not communicate this intent very clearly. Also, there is language in Strong implying that the failure to comply with the "protection of drivers whom the government requires to give blood samples under the implied consent law," including sections 316.1932, -.1933 and -.1934, Florida Statutes (1987), may render inadmissible test results taken in violation of the statute. Strong, 504 So.2d at 759; see also State v. Walther, 519 So.2d 731 (Fla. 1st DCA 1988).
We are frankly unsure whether this extra-statutory track for proof of violation of section 316.193, Florida Statutes, exists in a fact situation like Quartararo and the present case where blood was taken under compulsion for investigatory purposes rather than for medical treatment, as in Strong. If so, it is unclear whether the statute applies in all respects except where there is a failure to meet the statutory standards or whether a failure of proof in one respect means the state must jump all the traditional evidentiary hurdles identified in Strong. For example, if the state can prove the person who performed the blood test was qualified even though uncertified, can the state use the certification or test validation components of the statute to establish the qualifications of the person who drew the blood, the validity of the test and/or the meaning of the test results?
This court recently reversed a conviction for DUI/manslaughter because the state failed to prove that the technician was licensed as required by the implied consent statute and did not attempt to utilize traditional avenues of proof. Albritton v. State, 561 So.2d 19 (Fla. 5th DCA 1990). Because, tragically, criminal prosecutions for death or injury caused by intoxicated drivers are so frequent and because it is important for the state to know exactly what its evidentiary alternatives (and burdens) are in such cases, we certify to the supreme court as a matter of great public importance the following:
(A) MAY A CHEMICAL ANALYSIS PERFORMED IN ACCORDANCE WITH THE APPROVED METHODS CONTEMPLATED BY SECTION 316.1933 BE CONDUCTED UNDER THE SUPERVISION OF A PERMITTEE BY INDIVIDUALS NOT POSSESSING AN HRS PERMIT?
(B) CAN THE STATE INTRODUCE INTO EVIDENCE TEST RESULTS OF BLOOD SAMPLES TAKEN AT THE REQUEST OF LAW ENFORCEMENT IF THE REQUIREMENTS OF SECTION 316.1933 ARE NOT SATISFIED? IF SO, UPON PROOF OF QUALIFICATION OF THE PERSON TAKING BLOOD OR CONDUCTING THE TEST, CAN THE STATE NONETHELESS RELY ON THE PROVISIONS OF SECTIONS 316.1933 TO PROVE A VIOLATION OF SECTION 316.193 OR MUST THE STATE INTRODUCE COMPETENT PROOF *864 WHOLLY INDEPENDENT OF THE STATUTE?
AFFIRMED.
HARRIS, PETERSON and GRIFFIN, JJ., concur.
NOTES
[1] Dr. Duer received his HRS permit on February 6, 1989.