ANTOON, Judge.
This is an appeal of the trial court’s order suppressing blood alcohol test results. The issue is whether suppression was required because the .15 whole blood control had expired prior to the test of the defendant’s blood. Suppression was not required; therefore, we reverse.
The defendant was charged with driving-under the influence causing serious bodily injury and driving under the influence causing property damage or personal injury.[1] The charging document explained that, on January 26, 1995 at 4:07 in the morning, there was a car accident involving the defendant and another driver. Both drivers were injured and taken to the hospital.
An officer investigating the accident was informed by the paramedics that the defendant smelled of alcohol, leading the officer to request that the defendant’s blood be drawn for analysis. The blood was tested using a gas chromatograph. The results indicated that the defendant’s blood alcohol content was .17.
The defendant filed a pretrial motion’ to suppress his blood alcohol test results. In the motion, he asserted that his blood alcohol test results should be suppressed from evidence because the procedure undertaken in analyzing his blood failed to comply with rule llD-8.013(l)(e)2a of Florida’s Administrative Code in that the .15 whole blood control had expired eight months prior to the date the test was conducted on his blood.
The trial court conducted a hearing on the motion. The only witness called was Jeffrey Gayer, the FDLE crime lab analyst who performed the tests on the defendant’s blood. Gayer testified that the .15 whole blood control which is used to show the separation between methanol, acetone, ethanol and iso-propanol was past its expiration date for the “purposes of ethyl alcohol concentration.” In this regard, Gayer stated that the expiration date for the control was June of 1994, and the test on the defendant’s blood had been conducted in February of 1995. On cross-examination, Gayer explained that once the expiration date has passed, the manufacturer would no longer guarantee that the “concentrations of the volatiles that were in the samples” would be at the level listed. Gayer explained that he uses the .15 whole blood control to determine whether the FDLE crime lab’s instrument can discriminate between methanol, acetone, ethanol and isopro-panol. He further stated that the .15 whole blood control is not relevant or necessary to determine the actual concentration of “the particular substances.” No further testimony or discussion of the expired .15 whole blood control was presented by either party. Importantly, there was no testimony indicating that a “complete description of the proposed analytical procedure[s]” had not been given. Based upon this testimony, the trial court entered an order granting the defendant’s suppression motion, ruling that:
The only part of the motion that is meritorious is that the whole blood control of .15 expired in June 1994, a date prior to the February 8,1995 use of said control.
By enacting Florida’s implied consent statute, the legislature provided a statutory basis for the admission of blood alcohol test results in criminal trials.[2] In this regard, section 316.1934(2) of the Florida Statutes (1993) provides that the results of any blood alcohol test administered in accordance with the requirements of the implied consent statute shall be admissible into evidence. If valid test results yield an alcohol level of 0.08 or above, the person is guilty of driving with an unlawful blood alcohol level. Further, in order to be considered valid under the provisions of the implied consent statute, the chemical analysis of a person’s blood must have been performed “substantially in accordance with the methods approved by the Department of Law Enforcement.” The *104 statute also provides that any “insubstantial differences between the approved techniques and actual testing procedures” in any individual case do not render the test results invalid. See § 316.1934, Fla.Stat. (1993). See also Ridgeway v. State, 514 So.2d 418 (Fla. 1st DCA 1987).
Thus, in responding to the defendant’s motion to suppress, the state had the burden of showing that the test of the defendant’s blood was performed in substantial compliance with the applicable administrative rules and statutes. See State v. Donaldson, 579 So.2d 728 (Fla.1991). The state maintains that it met this burden because it complied with the statute and rules by providing a description of the procedures used in taking the test. We agree. Contrary to the defendant’s claim, rule 11D-8.013 sets forth no specific standards with regard to the .15 whole blood control and provides in relevant part:
(1) The application for a permit to determine the alcohol level of a blood sample shall be made on a form provided by the Department and shall include the following information:
[[Image here]]
(e) A complete description of proposed analytical procedure(s) to be used in determining blood alcohol level. Such description must include the following:
[[Image here]]
2. Identification of the equipment, reagents, calibrators and controls utilized in the analytical procedure, and assurance of the following:
(a) The documentation pertaining to ethyl alcohol calibration standards and controls used, whether purchased commercially or prepared by the analyst, includes the source of such materials and either the lot number and expiration date, if purchased, or the date and method of preparation and the verification by the analyst of the final product, if prepared. Such documentation must be maintained by the analyst or the laboratory....
Importantly, there is no evidence in the instant record to support a finding that substantial compliance was not met. In this regard, the state presented Gayer’s uncon-tradicted testimony that the lapsed expiration date would not affect the accuracy of the blood alcohol test results. At the hearing, the defendant had the opportunity to present evidence to rebut Gayer’s testimony but failed to do so.
In closing we note that, even if suppression under the statute had been required, the state was entitled to seek introduction of the defendant’s blood alcohol test results based upon the traditional rules of evidence for the admission of scientific results. See State v. Slaney, 653 So.2d 422, 429 (Fla. 3d DCA 1995). Blood alcohol test results are admissible into evidence without regard to the requirements of the implied consent statute provided that the state can “satisfy the traditional predicates for admissibility, including test reliability, the technician’s qualifications, and the test results’ meaning.” Robertson v. State, 569 So.2d 861, 863 (Fla. 5th DCA 1990), app’d, 604 So.2d 783 (Fla.1992).
REVERSED and REMANDED.
COBB and THOMPSON, JJ., concur.

. § 316.193, Fla.Stat. (1993).

. § 316.1932, Fla.Stat. (1993).