EVANDER, J.
The State appeals the trial court’s order granting Stephen Kleiber’s motion in li-mine to exclude the results of his blood alcohol test based on the State’s alleged failure to comply with section 316.1933, Florida Statutes (2010), and Florida Administrative Code Rule 11D-8.012. The rule directs that prior to collecting a sample of blood, the skin puncture area is to be cleansed with an antiseptic that does not contain alcohol. In the instant case, the paramedic who drew Kleiber’s blood used a dry gauze, rather than an antiseptic, to clean the skin puncture area. Because the trial court incorrectly applied a strict compliance standard in granting Kleiber’s motion, we reverse.
Kleiber was charged by information with DUI manslaughter, DUI with serious bodily injury, and two counts of DUI causing property damage. ■ At the hearing on Kleiber’s motion in limine, both parties ■relied on proffered evidence and deposition testimony from Trooper Timothy Cramer and. Lieutenant Misti Rinaudo.
The proffered evidence and deposition testimony reflected that Kleiber was the driver of a vehicle involved in a two-car collision in which an occupant of the other vehicle was killed; and another occupant suffered serious bodily injuries. Trooper Cramer was the accident investigator who arrived on the scene shortly after the crash. After observing the damage on Kleiber’s car and smelling alcohol on his breath, Trooper Cramer read Kleiber his Miranda[1] rights and asked if he would submit to a blood test pursuant to Floii-da’s implied consent law. Ultimately, Kleiber consented to the blood draw.
The blood kit came from Trooper Cram-er’s patrol car. The trooper showed Kleiber that the kit was sealed, so as to indicate that it had not been tampered with. Trooper Cramer removed the contents of the kit, which included a needle, two vials for the blood samples, a holder for the vials, and a sealed iodine swab packet. Lieutenant Rinaudo, a firefighter/paramedic, was the individual who actually drew Kleiber’s blood.
Typically, once the blood draw is complete, all of the kit’s contents go back inside the kit, excluding the used iodine swab. However, the swab’s expiration date will be recorded for documentation purposes. In this case, the iodine swab provided in the'kit was not used because Kleiber stated that h'e was allergic to iodine. As a result, Lieutenant Rinaudo retrieved dry, sterilized gauze from a sealed .packet and used the gauze to wipe off Kleiber’s arm before the needle was inserted. The gauze was then discarded. The vials of drawn blood were placed back in the blood kit and the blood kit was then resealed.
The proffered testimony of a Florida .Department of Law Enforcement (FDLE) toxicologist and a defense expert were in conflict. It is not necessary to detail the differing opinions in technical terms. It is sufficient to observe that FDLE’s toxicologist would opine that the use of a dry gauze rather than an antiseptic would not have undermined the reliability of Kleiber’s blood test results, and Kleiber’s retained expert would have suggested otherwise.
In granting the motion, the trial court stated:
It’s very clear the Administrative Code that it says, “Before collecting a sample of blood, the skin puncture area must be cleansed with an antiseptic that does not contain alcohol.”
[[Image here]]
*321 Therefore, with the language that has been placed in the Florida Administrative Code — it has been there for many years — and requires that it must be cleansed. Here, it’s not weighing the evidence out. It’s very clear that we do not know if it was cleansed with an antiseptic that does not contain alcohol. We’re never going to know that. It’s not here. It wasn’t substantially complied with, wasn’t strictly complied with.
And based on the.law' and strict— strictly interpreting the law and not allowing any other issues to come in, applying the law to the facts of this particular case, I’m going to grant the defense motion in limine, exclude the blood alcohol test results.
Initially, Kleiber argues that we lack jurisdiction to consider the State’s appeal. We disagree. Florida Rule of Appellate Procedure 9.140(c)(1)(B) grants the State the right to appeal an order “suppressing before trial ... evidence obtained by search and seizure.” As this court has previously explained, the drawing of blood for the testing of intoxicants constitutes a search under .the Fourth Amendment to the United States Constitution. State v. Geiss, 70 So.3d 642, 646 (Fla. 5th DCA 2011) (citing Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)); see also State v. Sercey, 825 So.2d 959, 976-77 (Fla. 1st DCA 2002) (holding that appellate court has jurisdiction to review trial court’s non-final order suppressing evidence of marijuana in defendant’s system because blood specimen upon which expert testimony sought to be excluded was obtained by search and seizure).
By enacting section 316.1933, the Legislature provided a statutory basis for the admission of blood alcohol test results in criminal trials. State v. St. Pierre, 693 So.2d 102, 103 (Fla. 5th DCA 1997). Section 316.1933(2)(b), Florida Statutes (2010), provides that “a chemical analysis of a person’s blood to determine the alcoholic content thereof must have been performed substantially in accordance with methods approved by [FDLE].” Pursuant to this legislative delegation, FDLE promulgated rule 11D-8.012. Section (1) of that rule provides:
Before collecting a sample of blood, the skin .puncture area must be cleansed with an antiseptic that does not contain alcohol.
Fla. Admin. Code R. 11D-8.012(1). Kleiber argues that this subsection was not complied with because Lieutenant Rinaudo cleaned the skin puncture area with dry gauze rather than an antiseptic.
Under Florida’s implied consent statute, “[a]ny insubstantial differences between approved methods or techniques . and actual testing procedures, ... shall not render the test or test results invalid.” § 316.1933(2)(b), Fla. Stat (2010). Thus, minor deviations from the rules will not prohibit the test results from being presented, as long as “there is evidence from which the fact finder can conclude that the [test] itself remained accurate.” State v. Donaldson, 579 So.2d 728, 729 (Fla.1991).
In the instant case, the trial court erroneously applied a strict compliance test by concluding that the mere fact that dry gauze, rather than an antiseptic, was used to cleanse Kleiber’s' arm mandated suppression of the blood test results. The trial court failed to consider whether the blood test would Still be reliable notwithstanding the use of dry gauze. See 'Fla. Admin. Code R. 11D-8.012(7) (“Notwithstanding any requirements in Chapter 11D-8, F.A.C., any blood analysis results obtained, if proved to be reliable, shall be acceptable as a valid blood alcohol level.”).
*322 On remand, the trial court should conduct an evidentiary hearing to determine whether there was substantial compliance with the promulgated rule in question.[2]
REVERSED and REMANDED.
COHEN, J. and ZAMBRANO, R.A., Associate Judge, concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Even if suppression is required under section 316.1933, the State may seek introduction of blood alcohol test results based upon the traditional rules of evidence for the admission, of scientific results. See Robertson v. State, 604 So.2d 783, 789-91 (Fla.1992); St. Pierre, 693 So.2d at 104.