# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-1252
_____

CYNTHIA PROCTOR BEDELL,

   Appellant,

   v.

STATE OF FLORIDA,

   Appellee.

_____

On appeal from the Circuit Court for Okaloosa County.
John T. Brown, Judge.

May 31, 2018

BILBREY, J.

   Appellant challenges the denials of her two dispositive motions to suppress evidence of her blood alcohol level. Following the denials of her motions Appellant pleaded no contest to the charge of driving under the influence of alcohol third conviction within ten years, reserving her right to appeal the denials. *See* § 316.193(2)(b)1, Fla. Stat. (2016). Because we find that the trial court applied the correct law and that the court's findings of fact were supported by competent substantial evidence, the denials of the motions to suppress are affirmed.

We review orders denying motions to suppress under a mixed standard. As we stated in *State v. Gandy*, 766 So. 2d 1234, 1235 (Fla. 1st DCA 2000):

> A trial court's ruling on a motion to suppress comes to us clothed with a presumption of correctness, and we must interpret the evidence and reasonable inferences and deductions in a manner most favorable to sustaining that ruling. *Johnson v. State,* 608 So. 2d 4, 9 (Fla.1992), *cert. denied,* 508 U. S. 919, 113 S. Ct. 2366, 124 L. Ed. 2d 273 (1993).

Because a motion to suppress presents mixed questions of law and fact, "an appellate court must determine whether competent, substantial evidence supports the lower court's factual findings, but the trial court's application of the law to the facts is reviewed de novo." *State v. Murray*, 51 So. 3d 593, 594 (Fla. 5th DCA 2011).

The facts adduced at the suppression hearings were consistent and generally undisputed. According to the Okaloosa County Sheriff's deputy who responded to the single-vehicle crash, he found Appellant in the driver's seat of her vehicle with a cup of vodka in the cup holder and a partially filled bottle of vodka in the front passenger seat. The deputy described Appellant's demeanor and the condition of her vehicle, which had left the roadway and collided with a sign post. He stated that his observations led him to immediately suspect that Appellant had been driving under the influence of alcohol. Video from the deputy's body camera recorded at the crash site was admitted into evidence and was consistent with his description of his encounter with Appellant.

Appellant was not arrested at the scene of the accident, but the deputy encouraged her to accept transportation to a medical facility by ambulance. The deputy testified that Appellant agreed to be transported but her condition required physical assistance to enter the ambulance. The deputy explained that he did not administer a breath test at the scene because he had no equipment to do so with him. He did not collect a urine sample at

the scene because it was not the Sheriff's office practice to do so in the field.

The deputy proceeded to the medical facility and located Appellant in a treatment room. He observed that Appellant was conscious but lying in a bed with an IV inserted in her arm. According to his testimony, the deputy read Appellant her *Miranda* rights at the medical facility and thereafter, he presented her with the voluntary consent form used by the Okaloosa Sheriff's office for purposes of obtaining a blood sample for alcohol testing. The deputy read the consent form to Appellant and she signed it. The deputy did not offer Appellant a breath test at the hospital because he had no equipment to do so. He did not request that she provide a urine sample either, because Appellant's condition convinced him that she could not safely stand and walk to the bathroom to provide a sample without falling.[1]

Both the deputy and the medical facility's "patient care technician" testified about their actions in collecting and handling the blood samples as Appellant lay in the hospital bed. Each testified that they consulted the instructions on the kit for each step and marked and sealed the vials according to the instructions. After the blood vials were sealed, both witnesses testified that the sealed vials were tipped during the process as the technician checked her watch, placed horizontally beside Appellant on her bed, and moved from the bed to the collection box. The testimony regarding the chain of custody of the vials as they moved from the hospital to the Sheriff's Office to the FDLE lab and back was undisputed.

Four months after the date of the accident, the blood test results showing a .194 blood alcohol level led to Appellant's arrest and criminal charges. The parties agreed that the motions to suppress the results of Appellant's blood test were dispositive in the case.

---

[1] There was no testimony or argument below as to whether it was impractical to use a bedpan or catheter to obtain a urine sample from Appellant. Furthermore, no such argument is made on appeal.

3

Appellant's first motion sought to exclude the test results because the samples were not "inverted several times to mix the blood with the preservative and coagulant" as required by rule 11D-8.012(3), Florida Administrative Code. After the evidentiary hearing, the trial court denied this motion based on its finding that the collection and handling of the blood samples "substantially complied" with the requirements of rule 11D-8.012(1)-(6) and that there was no evidence of a substantial adverse effect from failing to strictly follow subsection (3) of the rule.

On appeal, Appellant argues that the trial court's application of a substantial compliance test was legal error and that strict compliance with rule 11D-8.012(3) was required. However, we find that the trial court applied the correct standard and law to the facts in evidence.

Unquestionably, blood alcohol tests must be conducted in conformity with the rules governing collection and handling of the samples. *Gargone v. State*, 503 So. 2d 421 (Fla. 3d DCA 1987). Where there is "virtually no adherence" to the applicable rules — for instance, where only the labeling requirement is met but none of the other procedures are followed — suppression is required. *Id.* at 423. But the standard is "substantial compliance" with the rules, so as to produce reliable scientific evidence. *Id.; State v. Burke*, 599 So. 2d 1339, 1342 (Fla. 1st DCA 1992) ("The admissibility of the result of such blood alcohol tests shall also be judged by a determination of whether substantial compliance with the rules and regulations has taken place.").

"[M]inor deviations from the rules will not prohibit the test results from being presented, as long as 'there is evidence from which the fact finder can conclude that the [test] itself remained accurate.'" *State v. Kleiber*, 175 So. 3d 319, 321 (Fla. 5th DCA 2015), *quoting State v. Donaldson*, 579 So. 2d 728, 729 (Fla. 1991). In *Kleiber*, the defendant's arm was swabbed with dry gauze rather than an alcohol-free antiseptic as prescribed by rule 11D-8.012(1). *Kleiber,* 175 So. 3d at 320. The appellate court reversed the trial court's suppression of the test results under a strict compliance standard and held that substantial compliance was the correct standard. *Id.* at 321-322; *see* § 316.1932(1)(f),

Fla. Stat. (2016) (blood and breath tests "shall be administered at the request of a law enforcement officer substantially in accordance with the rules" governing approved method).

Accordingly, in denying Appellant's first motion to suppress, the trial court's finding of substantial compliance with the procedures set out in rule 11D-8.012 applied the proper standard to the evidence presented. The court's finding that Appellant "presented no evidence of a substantial adverse effect" from the handling of the vials, which were incidentally tipped and moved immediately after the blood was drawn, but not "inverted several times" as rule 11D-8.012(3) requires, was not an improper shift of the burden of proof to Appellant. Once the State showed substantial compliance with the rule, Appellant was free to present any evidence that the deviation affected the accuracy of the test. The court's statement merely noted that Appellant did not present any such evidence.

In her second motion to suppress, Appellant asserted that the blood samples were illegally obtained because she was not offered a breath test or a urine test prior to the law enforcement officer's request that she consent to a blood draw. She relied on section 316.1932(1)(c) for her position that without a prior offer of these less-intrusive testing methods, her consent could not be implied and her actual consent was involuntary. The trial court denied suppression on this ground, finding that "a urine test was impractical" based on the deputy's testimony that Appellant's condition caused him to believe that Appellant was at risk of falling on the way to the bathroom.

On appeal of this order, Appellant argues that the trial court's denial of her motion was unsupported by any evidence that a urine test was impractical. Section 316.1932(1)(c) establishes the conditions under which a driver is "deemed to have given his or her consent to submit to an approved blood test for the purpose of determining the alcoholic content of the blood." The statutory conditions are:

> (1) where there is reasonable cause to believe the person was driving a vehicle while under the influence of alcohol, chemicals, or controlled substances; (2)

> where the person appears for treatment at a medical facility; and (3) where the administration of a breath or urine test is impractical or impossible.

*State v. Serrago*, 875 So. 2d 815, 819 (Fla. 2d DCA 2004).

Conditions (1) and (2) above were not contested at the motion hearing and are not challenged on appeal. For condition (3), the trial court's determination whether the administration of a breath or urine test is impractical or impossible is a finding of fact. *See State v. Polak*, 598 So. 2d 150 (Fla. 1st DCA 1992). A trial court's "determinations of factual questions must be accepted by the appellate court if the record supports that finding." *Id*. at 152.

The record supports the trial court's finding that it was impractical to administer a urine test to Appellant under the circumstances. The court specifically relied on the deputy's testimony and considered his medical training and background. Our review of the record testimony at the motion hearing confirms that the deputy proceeded with the blood test because he believed Appellant was not in a condition to safely provide a urine sample at the time. The fact that medical personnel could have been called in to assist Appellant to the bathroom, as suggested by defense counsel on cross-examination, is inapposite. Even if a urine test was not "impossible" due to the availability of hospital personnel to assist, the trial court's finding that a urine test was "impractical" is an alternative statutory basis upon which Appellant may be deemed to have consented to submit to an approved blood test under section 316.1932(1)(c).

Appellant fails to establish that the trial court applied the incorrect legal standard to the compliance of the blood draw procedure with rule 11D-8.012, Florida Administrative Code. Appellant also fails to show any deficiency in the evidence supporting the trial court's finding of fact that a urine test was "impractical" for purposes of implied consent under section 316.1932(1)(c), Florida Statutes. The orders on appeal denying the motions to suppress are therefore AFFIRMED.

RAY and WINOKUR, JJ., concur.

6

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____


Dustin Dewrell, Shalimar, for Appellant.

Pamela Jo Bondi, Attorney General, and Sharon S. Traxler, Assistant Attorney General, Tallahassee, for Appellee.