DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**TAYLOR S. BUONANOTTE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D22-826

[February 15, 2023]

Appeal from the County Court for the Fifteenth Judicial Circuit, Palm Beach County; Leonard Hanser, Judge; L.T. Case No. 50-2021-MM-005697-AXXX-SB.

Carey Haughwout, Public Defender, and Narine N. Austin, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, J.

The defendant appeals an adjudication of guilt for driving under the influence ("DUI") causing property damage or injury (enhanced) and resisting an officer without violence. She argues that the trial court erred by denying her motion to suppress evidence of her blood alcohol content, which was obtained via a blood draw. More specifically, she contends that the state failed to prove that a breath test was impossible or impractical, and, thus, it failed to prove the legality of the blood draw under section 316.1932(1)(c), Florida Statutes (2021), an implied consent statute. We disagree and affirm.

At the hearing on the motion to suppress, the evidence revealed that the defendant was involved in a violent car accident in which airbags deployed and one of the cars rolled over. At the scene of the accident, the defendant was emotional, frantic, yelling, and combative, as evidenced by both officer testimony and footage from one police officer's body camera. The officers initially detained the defendant because she continuously reached into her car despite commands by the officers to stop, and the

officers were concerned for their own safety as well as potential evidence tampering. A second reason to detain the defendant was for a DUI investigation, because the responding police officers observed the defendant with red, glassy eyes, slurred speech, and emanating a strong odor of alcohol.

When officers attempted to place the defendant in handcuffs, she actively resisted, slipped out of her handcuffs several times, and refused to sit in the back of the police car. Fire Rescue personnel eventually administered ketamine, an anesthetic and sedative, due to her erratic emotional state. Despite the defendant's protests, Fire Rescue transported her to the hospital.

A police officer went to the hospital thereafter and was told by the charge nurse that the defendant would be there at least several hours because of the nature of the crash and, the officer believed, because of Fire Rescue having administered medication. A video taken at the hospital showed that the defendant was lying in a hospital bed and in a neck brace. The officer attempted to speak with the defendant, but she was incoherent, so he asked hospital staff for a blood draw.

The trial court denied the defendant's motion to suppress the blood alcohol levels obtained from the blood draw, and the defendant entered a plea, reserving the right to bring this appeal.

"The ruling of the trial court on a motion to suppress . . . is clothed with the presumption of correctness, and the reviewing court will interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustain the trial court's ruling." *McNamara v. State*, 357 So. 2d 410, 412 (Fla. 1978). "[A]n appellate court must determine whether competent, substantial evidence supports the lower court's factual findings, but the trial court's application of the law to the facts is reviewed de novo." *State v. Murray*, 51 So. 3d 593, 594 (Fla. 5th DCA 2011). "[T]he trial court's determination whether the administration of a breath or urine test is impractical or impossible is a finding of fact." *Bedell v. State*, 250 So. 3d 146, 150 (Fla. 1st DCA 2018).

Pursuant to section 316.1932(1)(c), Florida Statutes (2021), in relevant part, a driver is deemed to have consented to having blood drawn for testing for alcohol content or the presence of chemical substances or controlled substances where (1) there is reasonable cause to believe the driver has been driving under the influence of alcohol or chemical or controlled substances, (2) the driver appears for treatment at a hospital, and (3) the administration of a breath or urine test is impractical or

2

impossible.[1]   "Any person who is incapable of refusal by reason of unconsciousness or other mental or physical condition is deemed not to have withdrawn his or her consent to such test."  *Id.*

The defendant disputes the state's proof of only the third prong, whether a breath or urine test was as the statute provides, "impractical or

---

[1] Section 316.1932(1)(c) provides:

> Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by operating such vehicle, deemed to have given his or her consent to submit to an approved blood test for the purpose of determining the alcoholic content of the blood or a blood test for the purpose of determining the presence of chemical substances or controlled substances as provided in this section if there is reasonable cause to believe the person was driving or in actual physical control of a motor vehicle while under the influence of alcoholic beverages or chemical or controlled substances and the person appears for treatment at a hospital, clinic, or other medical facility and the administration of a breath or urine test is impractical or impossible.  As used in this paragraph, the term "other medical facility" includes an ambulance or other medical emergency vehicle.  The blood test shall be performed in a reasonable manner.  Any person who is incapable of refusal by reason of unconsciousness or other mental or physical condition is deemed not to have withdrawn his or her consent to such test.  A blood test may be administered whether or not the person is told that his or her failure to submit to such a blood test will result in the suspension of the person's privilege to operate a motor vehicle upon the public highways of this state and that a refusal to submit to a lawful test of his or her blood, if his or her driving privilege has been previously suspended for refusal to submit to a lawful test of his or her breath, urine, or blood, is a misdemeanor.  Any person who is capable of refusal shall be told that his or her failure to submit to such a blood test will result in the suspension of the person's privilege to operate a motor vehicle for a period of 1 year for a first refusal, or for a period of 18 months if the driving privilege of the person has been suspended previously as a result of a refusal to submit to such a test or tests, and that a refusal to submit to a lawful test of his or her blood, if his or her driving privilege has been previously suspended for a prior refusal to submit to a lawful test of his or her breath, urine, or blood, is a misdemeanor.  The refusal to submit to a blood test upon the request of a law enforcement officer is admissible in evidence in any criminal proceeding.

§ 316.1932(1)(c), Fla. Stat. (2021).

3

impossible." She asserts that she should have been transported to a blood alcohol testing ("BAT") center while she was coherent and in handcuffs, but, instead, she was given a powerful sedative against her will, and the officer at the hospital took advantage of her sedation by ordering a blood draw without her consent. We disagree.

At the outset, we note that a *urine* test was impractical because the defendant was suspected of impairment due to alcohol consumption and, for purposes of section 316.1932, "[b]reath and blood tests detect alcohol content, whereas urine tests detect controlled substances." *See State v. Bodden*, 877 So. 2d 680, 689 (Fla. 2004).

Thus, we focus our analysis on the impossibility or impracticality of a *breath* test. A "standard evidentiary breath test is conducted after a motorist is arrested and transported to a police station, governmental building, or mobile testing facility where officers can access reliable, evidence-grade breath testing machinery." *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2534 (2019) (quoting *Birchfield v. North Dakota*, 579 U.S. 438, 487 (2016) (Sotomayor, J., dissenting in part)).

Mere inconvenience of a breath or urine test will not demonstrate impossibility or impracticality. *State v. Bokilo*, 23 Fla. L. Weekly Supp. 289a (Brevard Cty. Ct. May 11, 2015). In *Bokilo*, the county court determined that the defendant, who was in a rollover crash and was secured to a backboard on a gurney in the hospital, did not sufficiently demonstrate impossibility or impracticality of a breath test. *Id.* Additional evidence to establish impracticality "might" have included: "medical input as to the Defendant's condition and anticipated release time, availability of mobile breath test units, and the distance of the hospital to the police department." *Id.*

Likewise, in *Zelonker v. State*, 29 Fla. L. Weekly Supp. 227b (Fla. 11th Cir. Ct. June 3, 2021), the circuit court sitting in an appellate capacity determined that the state failed to prove impossibility or impracticality of a breath test where the non-hospitalized defendant was complaining of pain in his chest and back, but the defendant was conscious and in the officers' presence, testing equipment was readily available, and there was no evidence that defendant refused to submit to a breath test. *Id.*; *see also Gracia v. State*, 21 Fla. L. Weekly Supp. 875a (Fla. 15th Cir. Ct. May 8, 2014) (reversing denial of motion to suppress where DUI defendant was not in an accident, was taken to BAT facility, could not take breath test because there was blood in his mouth, and was then taken to a hospital to get medically cleared for breath test; officer did not inquire as to length of hospital stay or requisite treatment, so his request for blood sample was

not based on impossibility or impracticality of breath test); *State v. Garrett*, 25 Fla. L. Weekly Supp. 71a (Orange Cty. Ct. Feb. 17, 2017) (granting motion to suppress and determining there was insufficient evidence of impossibility or impracticality where defendant asked to be taken to hospital, but there was no testimony regarding defendant's medical condition or likelihood of hospitalization and what the officer knew of that condition).

By contrast, in *Bedell*, 250 So. 3d at 148, the defendant was involved in a car accident, her condition following the accident required physical assistance before she could enter the ambulance, and she was transported to a hospital where she was conscious but had an IV in her arm. *Id.* The First District upheld a determination that a urine test was impractical or impossible where a deputy testified that the defendant could not "safely" walk to a bathroom to provide a urine sample, and where the deputy did not offer her a breath test because he had no equipment to do so. *Id.* at 148, 150. The court noted that, although medical personnel could have been called to assist the defendant to the bathroom, a urine test remained "impractical." *Id.* at 150.

Turning to the case before us, the record clearly supports the trial court's determination that a breath test was impossible or impractical. Even prior to being administered the ketamine, the defendant was yelling, thrashing, and refusing to cooperate for an extended period of time. The evidence reflected that the officers could not effectively restrain her, as she repeatedly slipped out of her handcuffs and would not sit when she was in the back of the police car. From that evidence alone, it appeared unlikely that the defendant could be safely transported to a BAT facility, thus rendering administration of a breath test impractical.

Moreover, a breath test was impossible or impractical because the defendant was brought to the hospital, and medical personnel told the police officer that the defendant could not be released to him because the necessary tests to evaluate her for injuries would take at least a few hours. As the trial court explained, "the time frame for Defendant to be in the hospital (several hours), plus the time from the accident to getting to the hospital and being discharged therefrom, plus the time to be taken to a breath testing facility (and possibly the twenty-minute observation period required for a breath test, if not satisfied before arriving at the breath test location) indicates that a breath test was impractical or impossible."

Contrary to her argument, the fact that the defendant was taken to the hospital against her will instead of a breath alcohol testing facility does not change the outcome.

In investigations where there is a potential injury, great deference must be accorded to the trained medical personnel on scene in determining the practicality of obtaining a breath test. The law enforcement officers should respect the judgment of the medical professionals because the health and safety of a Defendant must always take precedence over securing evidence for the purposes of obtaining a conviction. . . . [W]here it is a close call as to whether the Defendant should be transported to a medical facility or a DUI facility, public policy demands that we err on the side of caution.

*State v. Renwick*, 7 Fla. L. Weekly Supp. 406a (Miami-Dade Cty. Ct. Apr. 4, 2000).

Here, although there was not testimony from the medical personnel on the scene and the defendant did not have any visible injuries, the evidence nevertheless demonstrated that the defendant was involved in a serious accident. As the trial court found, not taking her to the hospital would have been "unreasonable due to the risk of internal injuries not immediately obvious or detectable. For this Defendant, that factor combined with the intensity and duration of her confrontation with law enforcement, clearly showed the need for Defendant to be medically examined."

The officer's failure to ask for consent is likewise not dispositive in this case as the defendant was in a stupor and unable to coherently respond to basic questions. Thus, she was "incapable of refusal by reason of . . . mental or physical condition" and was thereby "deemed not to have withdrawn" her consent to a blood test. Although her state of stupefaction may have been the result of the administration of ketamine, as the trial court found, there was no evidence that the ketamine was administered at the direction of law enforcement. (We note, however, as the trial court did below, that "[i]t would be fundamentally unfair for law enforcement to produce, or be an agent of producing, the mental condition, which resulted in waiving the reading of implied consent.")

Finally, we point out that the defendant does not argue the evidence should have been suppressed based on the Fourth Amendment, so any such issue is beyond our scope of review in this case.

In sum, because the state's evidence demonstrated that a breath test was impractical or impossible under the circumstances, the trial court did not err by denying the motion to suppress. We affirm.

6

*Affirmed.*

WARNER and FORST, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**