DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

STATE OF FLORIDA,

Petitioner,

v.

ROBERT RONALD KILBURN,

Respondent.

STATE OF FLORIDA,

Petitioner,

v.

HOLLY ANN MARANO,

Respondent.

STATE OF FLORIDA,

Petitioner,

v.

ARTHUR JOSEPH DEPAUW,

Respondent.

Nos. 2D2024-0649, 2D2024-0652, 2D2024-0722
CONSOLIDATED

_____

August 15, 2025

Petitions for Writs of Certiorari from the County Court for Sarasota County; Erika Quartermaine, Judge.

James Uthmeier, Attorney General, Tallahassee, and Katherine Coombs Cline, Senior Assistant Attorney General, Tampa, for Petitioners.

Robert N. Harrison of Robert N. Harrison, P.A., Venice, for Respondents.

BLACK, Judge.

The State seeks certiorari review of the trial court's order determining that the State could not introduce, pursuant to section 316.1934(5), Florida Statutes (2023), evidence of breath alcohol tests obtained during driving under the influence investigations in three separate cases.[1] The same Intoxilyzer 8000 was used in each of the three investigations, and a single order was rendered by the trial court precluding the State from relying on the test results pursuant to section 316.1934(5) in all three cases. We consolidate the petitions for purposes of this opinion and deny relief.

Robert Kilburn, Holly Marano, and Arthur Depauw were each charged with driving under the influence, in violation of section 316.193. Kilburn, Marano, and Depauw individually filed motions to suppress, arguing that the Intoxilyzer 8000 used in their respective breath alcohol

---

[1] The State initially sought review of the order pursuant to Florida Rule of Appellate Procedure 9.140(c)(1)(B) as an order suppressing evidence. However, because the trial court specifically included in the order that it was not making a ruling pursuant to *State v. Bender*, 382 So. 2d 697 (Fla. 1980), the order does not suppress the breath alcohol test results "but merely requires the [S]tate to provide a particular kind of predicate before" it can introduce the results. *See State v. Kepke*, 596 So. 2d 715, 717 (Fla. 4th DCA 1992). Therefore, this court converted the appeals to petitions for writs of certiorari.

test was not an approved instrument and therefore not an approved test, as required by section 316.1932(1)(a).

The trial court rendered an order granting the motions to suppress on the statutory basis raised in the motions. In its order, the court found that the replacement of the breath tube in the Intoxilyzer 8000 was a repair not performed by an authorized repair facility and that, therefore, the breath tests were not conducted in substantial compliance with chapter 11D-8 of the Florida Administrative Code, such that the tests were not "approved" for purposes of section 316.1932, made applicable through section 316.1934(5).

Evidence at the suppression hearing included an email from a sheriff's deputy to the Florida Department of Law Enforcement advising that the breath tube of the intoxilyzer in question was "leaking and broken and in need of repair," as well as testimony that the sheriff's deputy sent the intoxilyzer to the Department and that a Department inspector replaced the breath tube. Evidence also established that a Department inspector removed the panel at the top of the intoxilyzer in order to access the breath tube, disconnected an O-ring as well as wires attached to an electronic chip, and removed and replaced the tube.

"For a district court to grant a writ of certiorari, the petitioner must 'demonstrate that the contested order constitutes "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case[,] (3) that cannot be corrected on postjudgment appeal." ' " *State v. Garcia,* 350 So. 3d 322, 325 (Fla. 2022) (alteration in original) (quoting *Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters.,* 99 So. 3d 450, 454 (Fla. 2012)). " 'Courts consider in tandem whether the contested order would cause the petitioner material injury and whether the petitioner has an adequate remedy on appeal,

3

referring to the combined question as whether the petitioner would suffer "irreparable harm." ' The irreparable harm question is jurisdictional, and we must address it first." *State v. Lyons*, 392 So. 3d 281, 284 (Fla. 2d DCA 2024) (quoting *Garcia*, 350 So. 3d at 325).

"Irreparable harm in the criminal context, when the petition is brought by the State, is a unique issue due to the State's limited ability to appeal." *State v. Milbry*, 219 So. 3d 160, 161 (Fla. 5th DCA 2017) (citing *State v. Pettis*, 520 So. 2d 250, 253 (Fla. 1988)). And "the Florida Supreme Court has held that where an order forces the State to proceed to trial with a significant impairment, and no appeal from the order would be available on an acquittal, the State may properly invoke certiorari review." *Id.*

Here, the State argues that the trial court's interpretation of the applicable law deprived it of "the statutory presumption of proof of breath tests results under section 316.1934" such that its ability to prosecute these cases has been substantially impaired. Because the court's ruling prevents the State from introducing the Intoxilyzer 8000 results under section 316.1934 and therefore precludes any presumptions afforded under the statute, the State has satisfied the jurisdictional prongs for certiorari review. *Cf. Milbry*, 219 So. 2d at 162 ("Because failing to consolidate robs the State of an entire theory of culpability, the State has alleged irreparable harm sufficient to invoke certiorari jurisdiction.").

As it did at the suppression hearing, the State contends that the replacement of the breath tube was maintenance and not repair and that because Department inspectors are authorized to perform maintenance on intoxilyzers, the breath tests were conducted in substantial compliance with chapter 11D-8 of the Florida Administrative Code, rendering them approved for the purposes of section 316.1932. The trial

4

court's ruling otherwise is, according to the State, a departure from the essential requirements of the law.

The State also argues a second departure has been shown because the trial court "improperly applied a strict compliance rather than a substantial compliance test" and that substantial compliance was shown where the intoxilyzer passed Department inspections pursuant to rule 11D-8.003(3), validating "the approval, accuracy and reliability of an evidentiary breath test instrument."

Section 316.1932(1)(a)1.a provides:

> A person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by operating such vehicle, deemed to have given his or her consent to submit to an *approved* chemical test . . . for the purpose of determining the alcoholic content of his or her blood or breath if the person is lawfully arrested for any offense allegedly committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages.

(Emphasis added.) "The Alcohol Testing Program within the Department of Law Enforcement is responsible for the regulation of the operation, inspection, and registration of breath test instruments utilized under the driving and boating under the influence provisions and related provisions located in this chapter and chapters 322 and 327." § 316.1932(1)(a)2. And the Program "[p]romulgate[s] rules for the administration and implementation of this section, including definitions of terms." § 316.1932(1)(a)2.*l.* The Program also has "the authority to approve repair facilities for the approved breath test instruments, including the authority to set criteria for approval." § 316.1932(1)(a)2.p. Finally, "[a]n analysis of a person's breath, in order to be considered valid under this section, must have been performed substantially according to methods approved by the Department of Law Enforcement." § 316.1932(1)(b)2.

5

Neither "maintenance" nor "repair" is defined in chapter 316 of the Florida Statutes or chapter 11D-8 of the Florida Administrative Code. "[W]hen the legislature does not define a term, we may derive its meaning from dictionaries." *Alvarez-Sowles v. Pasco County*, 386 So. 3d 224, 230 (Fla. 2d DCA 2024) (citing *Somers v. United States*, 355 So. 3d 887, 891-92 (Fla. 2022)). The word repair is generally understood to mean to fix something that is broken, and the dictionary defines repair as "to restore by replacing a part or putting together what is torn or broken." *Repair*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/repair (last visited May 17, 2025). Maintain, the verb form of maintenance, is defined as "to keep in an existing state (as of repair, efficiency, or validity): preserve from failure or decline." *Maintain*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/maintain (last visited May 17, 2025). It is apparent that the replacement of the breath tube constitutes a repair. And because it is a repair, we must next determine whether the repair was completed at an approved repair facility.

Rule 11D-8.002(13) defines "Authorized Repair Facility" as "the breath test instrument manufacturer or an entity authorized by the breath test instrument manufacturer to service and repair such breath test instrument." The Department is not the Intoxilyzer 8000 manufacturer, and the Department conceded that it is not an authorized repair facility.[2]

---

[2] Prior to July 29, 2015, the definition of authorized repair facility included the Department. The Department was removed from the definition "because the Department only performs maintenance on the breath test instruments and does not perform repairs." 41 Fla. Admin. Reg. 1842 (Apr. 16, 2015). In contrast, rule 11D-8.007(1) continues to include the Department: "only authorized repair facilities *or the*

The trial court did not depart from the essential requirements of the law in determining that replacing the breath tube constitutes a repair and that such repair was not done by an authorized repair facility.

The trial court expressly found that the tests were not conducted in substantial compliance with the Department's rules, as set forth in chapter 11D-8 of the Florida Administrative Code, because of the unauthorized repair. It applied the correct legal standard. *Cf. Bedell v. State*, 250 So. 3d 146, 149 (Fla. 1st DCA 2018) ("[I]n denying Appellant's first motion to suppress, the trial court's finding of substantial compliance with the procedures set out in rule 11D-8.012 applied the proper standard to the evidence presented."). Moreover, had the State argued that the court's finding regarding substantial compliance was a departure, we would conclude it was not. Unauthorized repair is not a minor deviation from the Department's rules. *Cf. State v. Donaldson*, 579 So. 2d 728, 729 (Fla. 1991) ("Minor deviations in compliance with the [Department of Health and Rehabilitative Services] regulations, *such as storage location or absolute timeliness of periodic inspection*, will not prohibit the test results being presented, provided that there is evidence from which the fact finder can conclude that the machine itself remained accurate." (emphasis added)); *State v. Willis*, 359 So. 2d 566, 569 (Fla. 2d DCA 1978) (Scheb, J., dissenting) ("There was no evidence before the trial court indicating that unlicensed personnel had ever taken the key or used the equipment. . . . Under these circumstances I . . . would not hold the results of the breathalyzer test inadmissible."), *cited with approval in Donaldson*, 579 So. 2d at 729 n.2 ("We would agree with the dissent in [*Willis*].").

---

*Department* are authorized to remove the top cover of an Intoxilyzer 8000." (Emphasis added.)

The trial court did not depart from the essential requirements of the law in interpreting and applying the operative statute and administrative code rules. Accordingly, the petitions for writs of certiorari are denied.

Petitions denied.

LaROSE and SLEET, JJ., Concur.

_____

Opinion subject to revision prior to official publication.